THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN TELLER, Defendant-Appellant.

First District (2nd Division)    No. 62473

Opinion filed January 11, 1977.

412

James Geis and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Ramon Noel Flores, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Steven Teller, was charged by indictment with the offenses of aggravated battery and robbery in violation of sections 12—4 and 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 12—4, 18—1). An accomplice, Gwen Cross, not directly involved in this appeal, was similarly charged, pled guilty to a charge of robbery, and was sentenced to a 5-year term of probation. Upon a jury trial, defendant was found to be guilty of aggravated battery and not guilty of robbery. Judgment was entered on the verdicts and defendant was sentenced to a term of confinement of 3 to 10 years in the Illinois State Penitentiary.

From entry of the judgment of conviction defendant appeals and contends (1) that the trial court erred in failing to hold a hearing on defendant's pretrial motion to quash the indictment and dismiss the venire due to the alleged systematic exclusion of "American Indians" from the grand jury panel; (2) that the trial court was predisposed towards defendant's guilt and erred in failing to recuse himself *sua sponte*; (3) that the trial court erred in permitting the State to present certain rebuttal evidence concerning defendant's post-arrest threats upon

the life of the complaining witness; and (4) that the sentence imposed upon defendant was excessive in proportion to that received by his accomplice.

A review of the evidence indicates that at approximately 5 a.m. on August 7, 1973, the complaining witness, Stanley Fernandez, was walking in the company of his friend, Phillip Jobe, in the vicinity of 900 West Wilson Avenue, in Chicago, Illinois. As the men proceeded east on Wilson Avenue, Fernandez observed a girl sitting in the grass. As Fernandez and Jobe walked past the girl, she "jumped up" and began pushing Fernandez from the rear. At this point Jobe fled. Fernandez told the girl to "leave him alone" but she continued to push him across Wilson Avenue.

On the other side of the street, two men stood on the sidewalk facing Fernandez. He described the two men as well as the girl as "Indians." Fernandez testified that the girl pushed him into the two men who "came at me [Fernandez] and started beating me with their fists." They knocked him to the ground, kicked him, and continued to beat him as he lay prostrate. Fernandez also indicated that one of the men took approximately $6 in dollar bills and coins from Fernandez' shirt.

The latter individual was described as approximately 6 feet tall, weighing 160 pounds, dressed in a blue, short-sleeved denim shirt, brown pants, and bearing "pock marks" on his face and tattoos on his arms. Fernandez indicated that the assault required "a matter of a few minutes" and that the street was illuminated by both streetlights and the approaching daylight. Visibility was characterized as "good." Fernandez is "near-sighted" and wears glasses "only to read with" but was not wearing them on the night of the attack. Prior to the attack, Fernandez and Jobe had been drinking beer at two bars and spent some time at a friend's home.

Fernandez identified defendant as the man who beat and robbed him.

According to Fernandez, after defendant had stolen his money, the assailants ran from the scene in an easterly direction on Wilson Avenue. Within "seconds" a police vehicle arrived at the vicinity. Fernandez was transported to hospital facilities for emergency treatment, subsequently to the police station where he identified defendant as one of the assailants, and later was returned to the hospital. Fernandez was confined to the hospital for one week where he received treatment for scalp lacerations, two broken wrists, facial abrasions and bruises he sustained as a result of the assault.

The State also introduced the testimony of Bill McRoberts who testified that between 4 and 5 a.m. on August 7, 1973, he was driving his automobile in the vicinity of 900 West Wilson Avenue, where he had occasion to observe three persons, two males and a female, "beating up

on the older fellow." The trio "had him against the building" and were "punching," "hitting," and "stomping" him. They were also "going through his pockets" as one of them said, "Get his money." McRoberts testified that one of the assailants wore a blue, short-sleeved shirt and bore tattoos on his arms.

McRoberts curbed his vehicle and sounded his horn; however, the man and his companions continued to beat their victim. McRoberts drove off in search of assistance and within 2 minutes returned in the company of three police officers. Upon his return, McRoberts observed the assailants standing on the corner "counting the money." Fernandez was left prostrate on the sidewalk.

McRoberts identified defendant as one of the assailants and noticed that at the time of the arrest on the scene, defendant "had blood all over his hands, and his shirt was all bloody." McRoberts also identified at trial a bloodstained shirt introduced into evidence as the one worn by defendant during the course of the beating and at the time of his apprehension moments after the beating.

The State also adduced the testimony of Chicago Police Officer Charles Woods who testified that he and his fellow officers, McMann and Smeraglia, were summoned by Bill McRoberts to the scene of an assault in the vicinity of 900 West Wilson Avenue. Upon arriving on the scene he observed Fernandez lying on the ground. Woods testified that Fernandez pointed to the three individuals leaving the area. Two of the individuals were male, the third was female. One of the men wore a blue denim, short-sleeved shirt and combat boots. This individual was identified as defendant. According to Officer Woods, defendant and his companions were the only persons near the scene. Woods observed that defendant had tattooed arms and blood on his arms and shirt. The officers effected defendant's arrest and that of the girl. The third assailant eluded the police as they approached. Officer Woods transported defendant to police facilities, inventoried his shirt and recovered $4.15 in bills and coins from defendant's person.

The parties stipulated that blood samples taken from defendant's shirt matched the victim's blood type.

Defendant testified in his own behalf and denied having beaten or robbed Fernandez. Defendant indicated that he bloodied his shirt the night before his arrest as a result of a bite he received on his back during the course of a fight or "rassling" with a friend and the latter's girl friend. Defendant did not seek medical attention at the time but did bleed "enough to put that blood on the shirt."

Defendant admitted his presence in the vicinity of the struggle. According to defendant, he was walking to his place of employment, in

the vicinity of Wilson and Hazel Avenues, when he saw a man and a woman struggling in the street. Two other men were there but ran away. The woman yelled that " * * * the man was molesting her or something." Defendant observed Fernandez' face and noted that it was not bleeding. Defendant watched the struggle for several minutes and walked away.

Defendant testified that he had walked about a half a block when the girl, Gwen Cross, ran up behind him. At this time the police effected their arrests. Defendant admitted that he bore tattoos on his arms; that he was wearing a blue, short-sleeved shirt at the time of his arrest; and that the front, back and right sleeve of the shirt bore bloodstains. Defendant also asserted that he did not have blood on his hands at the time of his arrest.

Defendant initially contends that the trial court erred in failing to hold an evidentiary hearing on defendant's pretrial motion to quash the indictment and dismiss the venire due to the alleged purposeful and systematic exclusion of "American Indians" from the grand jury panel. In support of this allegation defendant asserted that the method of selecting grand jury members from county voter registration lists "tends to exclude Indians from participation as members of Grand Juries" because of these citizens' distrust, "as a race," of governmental forms.

■■ The right to be free from discrimination does not entitle a defendant in a criminal case "to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. [Citations.] Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." (*Swain v. Alabama* (1965), 380 U.S. 202, 208, 13 L. Ed. 2d 759, 85 S.Ct. 824.) All a defendant can demand is to be indicted by a grand jury or tried by a petit jury from which members of his race have not been intentionally excluded because of race or color. *Virginia v. Rives* (1879), 100 U.S. 313, 25 L. Ed. 667.

■■ The burden of proving purposeful discrimination within these contexts is upon the defendant alleging it. However, a *prima facie* case may be made by showing a wide disparity between the total number of a racial group and the group's relatively small percentage of representation on the county jury lists. When a *prima facie* case is made out the burden shifts to the State to explain the disparity. *Whitus v. Georgia* (1967), 385 U.S. 545, 17 L. Ed. 2d 599, 87 S. Ct. 643; accord, *People v. Butler* (1970), 46 Ill. 2d 162, 263 N.E.2d 89; *People v. Cross* (1968), 40 Ill. 2d 85, 237 N.E.2d 437.

In the instant case defendant failed to establish a *prima facie* case so as to warrant submission of the issue to an evidentiary hearing. No offer of proof was made. There is no indication of record as to the number of "American Indians" who reside in Cook County or the percentage of

Cook County residents or voters who may be characterized as "American Indians." Indeed, neither party has offered a definition of what class, organization or tribe of individuals would fall within this category so as to properly establish an "American Indian" quota. Most importantly, there is no proffered support for the assertion that "American Indians," however defined, are not proportionately represented on the Cook County grand jury rolls.

Since there is no indication of record in the case at bar that "American Indians" were not adequately represented on the grand jury roll, defendant's contention that the method of selecting grand jury members from county voter registration lists is constitutionally suspect bears no merit. Under the standards previously enunciated, defendant failed to allege facts sufficient to demonstrate prejudice or systematic exclusion of "American Indians" from grand jury proceedings. Consequently, the trial court properly dismissed defendant's motion to quash the indictment.

■■ Defendant next contends that the trial court was predisposed towards defendant's guilt and erred in failing to recuse himself *sua sponte*. Defendant asserts that such prejudice is grounded upon the fact that prior to defendant's trial, the court accepted a plea of guilty from defendant's co-defendant, Gwen Cross, which plea entailed a recitation of a factual basis for the plea detailing defendant's participation in the assault of Fernandez. Defendant further asserts that this predisposition operated to his detriment and manifested itself by post-trial inquiries of the court to the members of the jury subsequent to their rendering of verdicts, certain comments of the trial court to the jurors in this regard, and the trial court's denial of defendant's motion for a new trial.

The trial court accepted Cross' plea of guilty whereupon the following colloquy transpired between Judge Bailey and Cross:

"THE COURT: Well, I realize—the one thing I want to make sure, when she is on probation the best thing she can do is stay away from people like this and the best thing she can do while on probation is stay away from saloons, because if you are stiff and drunk on the street at 18 years old you are going to get picked up for disorderly conduct and be brought back here and go to the penitentiary, so I'll tell you one thing, stay out of saloons, especially those type of saloons. Where was it, up on Wilson?

A. On Broadway.

Q. There is no way you can go in a saloon up there on Broadway or Wilson, get intoxicated, and walk out where you are not going to get in trouble, then you are going to be brought back here and you will go to the penitentiary.

Number one, *whatever happens to Teller*, stay away from him,

he or anybody up there will get you in trouble. You must stay out of saloons or at least that type of saloon. You are only 18 years old, you are still a little girl, you are not mature enough to be drinking and if you don't stop it you are going to have problems, do you understand that?

A. Yes, your Honor. " (Emphasis added.)

Such statements do not, of themselves, establish that the trial court was predisposed towards defendant's guilt. Nor do they make an affirmative showing that the trial court would consider the information gleaned from the Cross plea hearing in assessing the evidence supporting defendant's conviction when passing on the motion for a new trial. *People v.Collins* (1974), 21 Ill. App. 3d 800, 315 N.E.2d 916.

■■ In the instant case, there is no affirmative showing that the trial court considered information gleaned from the Cross plea hearing in reaching his decision to uphold the jury's conviction of defendant for the offense of aggravated battery. Nor can it be said that the court's decision was based upon or evidences reasoning contrary to the law or the evidence. The substantially unimpeached testimony of several eyewitnesses and the physical evidence adduced at trial simply cannot be ignored. Defendant's contention that the trial court was predisposed towards his guilt or improperly considered matters not in evidence is not borne out by the record.

■■ The trial court's inquiry to the jurors as to their reasons for acquitting defendent of the offense of robbery, which inquiry occurred subsequent to the rendering of this verdict, is not an improper interference or private investigation by the trial judge.

■■ Nor do the comments of the judge to the jury, expressing "shock" in the jury's verdict of acquittal, intimate any impropriety by the trial court. The evidence was more than adequate to establish defendant's guilt of aggravated battery beyond all reasonable doubt.

■■ Defendant next contends that the trial court erred in permitting the State to present certain rebuttal evidence concerning defendant's post-arrest threats upon the life of the complaining witness, as allegedly uttered at the police station.

Our review of the record indicates that such evidence was introduced to rebut defendant's contention that he did not threaten the complaining witness. As such it bore on defendant's credibility and on this basis its admission was proper. (*People v. Fleming* (1970), 121 Ill. App. 2d 97, 257 N.E.2d 271.) Nor can it be reasonably maintained that the introduction of this testimony, given the strength of the State's case, resulted in defendant's conviction. See *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.

■■ Defendant finally urges that the sentence imposed is excessive in that it unfairly discriminated between defendant and his accomplice, Gwen Cross. Defendant was sentenced to serve a term of confinement of 3 to 10 years in the Illinois State Penitentiary. Cross received a sentence of 5 years probation.

Such disparity of sentence may be justified due to the dissimilar backgrounds of the individual defendants. (*People v. Robinson* (1971), 3 Ill. App. 3d 267, 278 N.E.2d 137.) In the instant case, defendant Teller was 26 years of age at the time of trial and possessed a substantial criminal record, including 2 years imprisonment in Wisconsin for aggravated battery in January 1968; 2 additional years imprisonment in Wisconsin for assault while in prison; and 1 year's probation for the offense of theft in April 1973.

By contrast, Gwen Cross was only 18 years of age at the time of the offense and possessed no previous criminal record.

Based upon such factors it cannot be maintained that the trial court abused its discretion in the sentences meted out to defendant and his accomplice.

For the foregoing reasons the judgment and sentence of the circuit court is affirmed.

Judgment affirmed.

DOWNING and PERLIN, JJ., concur.