THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOSEPH C. ROLLINS, Defendant, Appellant.

First District (5th Division) No. 80—827

Opinion filed July 30, 1982.

James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and John M. Steed, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant Joseph C. Rollins—who admittedly killed James Johnson on April 2, 1979—was convicted of armed violence (based on the underlying felony of voluntary manslaughter), and was sentenced to 14 years imprisonment, after a jury found beyond a reasonable doubt that he was not justified in shooting Johnson. (See sections 9—2 and 33A—1 through 33A—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2 and 33A—1 through 33A—3).) He appeals, contending that his conviction should be reversed for the following reasons:

(1) The trial court erred when it ordered the jury to continue deliberating on the charges of murder and armed violence after the court accepted a verdict on the charge of voluntary manslaughter.

(2) The trial court erroneously refused to give a "subject to suspicion" cautionary instruction to guide the jury in its evaluation of the credibility of a prosecution witness who was a drug addict.

(3) The trial court erroneously precluded the defense from attempting to impeach the credibility of a prosecution witness by questioning her about whether "she would lie to obtain a prescription" for the drugs she was addicted to.

(4) The trial court erroneously precluded the defense from impeaching a prosecution witness with evidence that she had been convicted of armed robbery within the prior 10 years.

(5) The trial court erroneously permitted the prosecution to

present evidence of collateral crimes.

(6) The trial court erroneously denied a defense motion to exclude evidence that was derived from an unlawful police search.

(7) The evidence was not sufficient to justify giving instructions on voluntary manslaughter or to prove guilt beyond a reasonable doubt.

(8) The armed violence statute is unconstitutional as applied to defendant.

In addition to these defense arguments, the prosecution contends that we should remand to the trial court with directions to enter judgment, and impose sentence, for the offense of voluntary manslaughter.

The following facts are material to our decision.

Defendant shot and killed James Johnson—his wife's former boyfriend—on April 2, 1979, following a quarrel in the living room of defendant's apartment. According to defendant, he killed Johnson while acting in self-defense and in defense of his pregnant wife. Both defendant and his wife admitted that they initially lied to the police about defendant's involvement in the killing, and that they gave the police a phony story, fabricated by defendant, about Johnson having been shot by an unknown assailant. At trial, however, they testified that Johnson was attacking them with a liquor bottle when defendant shot him with a rifle. But, despite the importance of Johnson's alleged weapon to the claim of self-defense, defendant's wife claimed that she threw the bottle away when cleaning up after the shooting.

In contrast with this version of the killing, Belinda Hunt, a drug addict and prostitute who admitted that before trial she flip-flopped several times on whether she saw the killing, testified that Johnson was completely unarmed, and was 12 feet from defendant and his wife, when defendant shot him with a rifle. (According to an offer of proof, defendant pointed the rifle at Johnson and, before shooting, repeatedly demanded, "Why did you tell my wife I was in jail?" Before trial, however, the court ruled that the prosecution would not be permitted to impeach defendant with evidence of his prior convictions, and the court refused to permit Hunt to testify about defendant's statement to Johnson on the grounds that the reference to defendant's past imprisonment would have subverted the ruling which excluded evidence of defendant's criminal history.)

Additional evidence is included below where pertinent.

I. *The Verdict*

The jury received instructions on the offenses of murder (Ill. Rev.

Stat. 1979, ch. 38, par. 9—1), "intense passion" voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a)), "unreasonable belief" voluntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)), and armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). Three sets of verdict forms were provided: guilty and not guilty forms for murder, voluntary manslaughter, and armed violence. The jury deliberated on these charges, and returned a verdict finding defendant guilty of voluntary manslaughter.

The trial court accepted this partial verdict, and sent the jury back for further deliberations on the other charges. The jury then returned with verdicts finding defendant guilty of armed violence and not guilty of murder.

Defendant now argues that the jury's initial silence on the charge of armed violence constitutes an acquittal on that charge, and that the subsequent finding of guilty was coerced.

We disagree with both contentions.

Defendant's first argument is based on the line of cases which state that when a jury returns a verdict of guilty on one or more counts, the jury's silence on other counts constitutes an acquittal on those other charges. (See, *e.g., People v. Potts* (1949), 403 Ill. 398, 404, 86 N.E.2d 345, 348.) This is an accurate, although incomplete, statement of the applicable rule.The complete statement of the rule is that "where a jury, although convicting as to some, are silent as to other counts in an indictment, *and are discharged* without the consent of the accused *** the effect of such discharge is 'equivalent to acquittal.' " (Emphasis added.) *Selvester v. United States* (1898), 170 U.S. 262, 269, 42 L. Ed. 1029, 1032, 18 S. Ct. 580, 582.

When a verdict of guilty is accepted by the court and the jury is discharged, the jury's silence on other counts is treated as an acquittal because it would violate the prohibition against double jeopardy to re-try the defendant on those other charges. (*United States v. Barash* (2d Cir. 1969), 412 F.2d 26, 32.) But a defendant is not "twice put in jeopardy" when the trial court accepts a verdict of guilty on one count, and then sends the jury back for further deliberations concerning counts on which the jury was initially silent. *Barash.*

The Illinois Code of Criminal Procedure of 1963 requires juries to return verdicts on each offense charged (Ill. Rev. Stat. 1979, ch. 38, par. 115—4(j)), and it was proper for the trial court to order the jury to return verdicts for the charges on which they had initially been silent. See 2 Wright, Federal Practice and Procedure sec. 513, at 368 (1969).

It may be that a jury which returns a partial verdict intends to

acquit on the remaining charges, but it is equally likely that the jury simply did not reach a unanimous decision one way or another on the remaining charges. So, when a jury returns a partial verdict but the jury is not discharged, there is no reason to treat the jury's initial silence on the remaining counts as an acquittal.

Defendant also argues that the procedure used by the trial court coerced the guilty verdict on the charge of armed violence, and deprived him of the opportunity to have the jury exercise its power of leniency. According to this argument, (1) the trial court prevented the jury from changing its mind on the charge of voluntary manslaughter when it accepted the initial verdict of guilty, and (2) by ordering further deliberations on the charge of murder, the court improperly coerced the verdict of guilty of the charge of armed violence. However, we disagree with both contentions.

■■■ It is not coercive to merely inform jurors—as was done in the present case—that, even though they returned a verdict on one or more counts, they must also return verdicts on the remaining charges. (*United States v. Frankel* (2d Cir. 1933), 65 F.2d 285, 288.) And, when a jury is ordered back for further deliberations after rendering a partial verdict, the defendant has no right to "subsequent vacillations" by the jury on the verdict that was accepted by the trial court. *United States v. Cotter* (2d Cir. 1932), 60 F.2d 689, 690.

Furthermore, defendant admittedly killed Johnson with a rifle, a category I dangerous weapon under the armed violence statute. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1.) After finding him guilty of voluntary manslaughter, the jurors could have found defendant not guilty of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) only if they violated their sworn duty and ignored either the undisputed facts or the court's instructions of law. See Illinois Pattern Jury Instructions, Criminal No. 1.01 (1968 and 1981 eds.) (hereinafter cited as IPI Criminal).

We recognize that juries have the *power* to return verdicts which defy both the facts and the law. (*Horning v. District of Columbia* (1920), 254 U.S. 135, 138, 65 L. Ed. 185, 186-87, 41 S. Ct. 53, 54.) However, this does not mean that the power of jury nullification is *authorized*; instead, it is simply a corollary of the constitutional rule that there is no appeal from a verdict of acquittal in a criminal case. See Ill. Const. 1970, art. VI, sec. 6; see also *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L.Ed. 2d 642, 651, 97 S. Ct. 1349, 1354.

"Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal *** could not

be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.' " (*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1354.) Jury nullification, therefore, is the price we willingly pay so that the government will be prohibited from subjecting defendants to the ordeal of being repeatedly tried for the same offense. But, a defendant has no right to have the jury defy the law or ignore the undisputed evidence. Consequently, defendant's rights were not violated even if the procedure used by the trial court in the present case induced the jury to forego its power of nullification when it returned a verdict of guilty on the charge of armed violence.

II. *Cautionary Instructions*

Defendant argues that it was reversible error to refuse to give a proposed cautionary instruction that "[t]he testimony of a narcotics addict is subject to suspicion and should be considered by you with caution." This instruction, modeled after the pattern instruction concerning accomplice testimony (IPI Criminal No. 3.17 (1968)), was offered because the prosecution's occurrence witness, Belinda Hunt, admitted that she was a drug addict at the time of the shooting.

The supreme court has frequently acknowledged that drug addiction may have an effect on the "power and the inclination of [a] witness to be truthful," in addition to having an effect upon the capacity to accurately observe and remember. (See, *e.g., People v. Bazemore* (1962), 25 Ill. 2d 74, 77, 182 N.E.2d 649, 650.) As a result of these factors, the supreme court stated, in *People v. Perkins* (1962), 26 Ill. 2d 230, 234, 186 N.E.2d 330, 332, that a witness who is a narcotics addict and an informer is so similar to an accomplice that "close scrutiny of the testimony of such a witness" is warranted. Thus, the appellate court has referred favorably to a drug addict cautionary instruction modeled on the strongly worded accomplice-testimony instruction. See, *e.g., People v. Garrett* (1976), 44 Ill. App. 3d 429, 439, 358 N.E.2d 364, 371-72; *cf.* 1 Devitt and Blackmar, Federal Jury Practice and Instructions sec. 17.03, Notes at 528 (3d ed. 1977) ("A narcotics addict who testifies for the prosecution is a witness of questionable reliability, because of his fear of prosecution and of being deprived of a supply of the substance he craves, but failure to so advise the jury does not necessarily require reversal if the evidence is otherwise very strong").

Our courts regularly instruct jurors in criminal cases that they "are the *sole* judges of the credibility of the witnesses and of the

weight to be given to the testimony of each of them." (Emphasis added.) (IPI Criminal No. 1.02 (1968); see also IPI Criminal No. 1.02 (2d ed. 1981) (substituting "believability" for "credibility").) But the court can usurp the jury's fact-finding function when it instructs them that the testimony of certain witnesses is subject to suspicion and should be considered with caution. See *United States v. Lee* (D.C. Cir. 1974), 506 F.2d 111; see also *Lee*, at 118 ("Even a Federal judge must take care lest his instruction oversteer members of a jury in fact, notwithstanding a general disclaimer that theirs is the fact function").

We note that the drafting committee notes for the 1981 edition of IPI Criminal, indicate that it may be appropriate in a particular case to insert, in the general instruction on credibility,* the factor of drug addiction as one of the things which can be considered when evaluating testimonial credibility. (IPI Criminal No. 1.02, Committee Note, at 6 (2d ed. 1981).) However, this suggestion was not included in the first edition of IPI Criminal, and defendant, who was tried in 1979, did not request that the court give the type of addict-witness instruction which the IPI first suggested in 1981. We are therefore concerned with determining whether it was reversible error to fail to give the more strongly worded "subject to suspicion" cautionary instruction which was proposed by the defense.

Jurors do not leave their common sense behind when they enter court, and even in the absence of cautionary instructions they will ordinarily be aware of the factors which make some witnesses unreliable. (*United States ex rel. Swimley v. Nesbitt* (7th Cir. 1979), 608 F.2d 1130, 1134.) So, even though attorneys attach great significance to such things as cautionary instructions, experience teaches us that "[j]ury verdicts, at least in criminal cases, are apt to depend more upon rough or even instinctive judgments than upon refined analysis of the evidence." (8A Moore's Federal Practice par. 30.02 (2d ed. 1981).) Thus there is a significant difference between the need for instructions which merely tell the jurors how to evaluate specific evidence, and the need for instructions which explain the government's burden of proof and list the elements of the offenses charged. *United States ex rel. Swimley v. Nesbitt* (7th Cir. 1979), 608 F.2d 1130, 1134.

■ Considering the jury's role as "the sole judge" of the facts, we agree that requests for cautionary instructions involve "an area of

---

*IPI Criminal No. 1.02 (1968 and 1981 eds.) provides in part:
"In considering the testimony of any witness, you may take into account his ability and opportunity to observe, [his age,] his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

the law where the baseline of doctrine calls for affirmance of a judge who confines himself to general instructions on credibility as affected by witnesses' interest, and to providing in that way a context that supports the materiality of efforts of counsel to elicit evidence and present argument. Defendant then has the burden of supporting any claim that special instructions are imperative on the ground that there is jusitification for this exception in the need to assure a fair trial." *United States v. Lee* (D.C. Cir. 1974), 506 F.2d 111, 118.

■ In the present case, Belinda Hunt admitted she was a long-time drug addict, and that she flip-flopped several times in pretrial statements on whether she saw defendant shoot James Johnson. Under these circumstances, every juror with a modicum of common sense undoubtedly concluded that Hunt's testimony was "subject to suspicion" and had to be "considered with caution."

The defense attorney thoroughly attacked Hunt's testimonial credibility, and vigorously argued that her testimony was not worthy of belief. Moreover, the trial court gave the general instruction on testimonial credibility, and we conclude that the court did not abuse its discretion by deciding that the much more strongly-worded proposed cautionary instruction would have constituted judicial "oversteering" which would have unduly infringed upon the jury's factfinding function. The proposed cautionary instruction simply was not necessary to assure a fair trial, and we affirm the trial court's ruling.

III. *Cross-Examination*

■ Defendant argues that the trial court committed reversible error by preventing the defense attorney from asking Belinda Hunt whether she "would fabricate and exaggerate ailments to a public aid clinic in order to get herself a prescription" for the drugs she was currently addicted to. But the trial court did not abuse its discretion in concluding that the slight potential probative value of questions about whether the witness *might* "fabricate" was substantially outweighed by considerations of the trial time which would have been consumed in pursuing the collateral issues raised by this line of questioning.

■ Moreover, defense counsel never represented to the court that the witness had in fact ever lied to a physician as part of a scheme to obtain drugs. Instead, counsel admitted that he was just fishing. Under these circumstances it would have been improper to permit counsel to ask a series of questions which would have implied that the witness actually had lied to a physician to get drugs. See ABA Standards, The Defense Function sec. 7.6(d), at 132; ABA Standards,

490

The Prosecution Function sec. 5.7(d), at 98 (1974 comp.) ("It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by evidence.")

IV. *Impeachment with Prior Convictions*
■■ Defendant argues that the trial court erroneously precluded the defense from impeaching Belinda Hunt with evidence that she had been convicted of armed robbery within the prior 10 years.

We agree that the trial court erred, but we find that the error is harmless.

Under *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E. 2d 695 (adopting the 1971 Revised Draft of the proposed Federal Rule of Evidence 609), it was proper to exclude evidence of Hunt's prior felony conviction only if the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. In contrast with the 1971 Draft, the present Rule 609(a), as amended and enacted by Congress, provides that, except for crimes involving dishonesty or false statement, the court can preclude impeachment by evidence of a felony conviction only if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect *to the defendant.*" (Emphasis added.) Fed. R. Evid. 609(a) (1975).

The Congressional Conference Committee which approved this limitation filed a report which states:

> "The danger of prejudice to a witness other than the defendant (such as injury to the witness' reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record." House Report No. 93-1597; Fed. R. Evid. 609, Conference Committee Notes, 28 U.S.C.A. 286-87 (1975).

■■ The committee's analysis is persuasive, but the version of Rule 609 adopted by the Illinois Supreme Court does not include the limiting language found in the Federal rule. Illinois law therefore permits trial courts to exercise discretion in deciding whether to preclude impeachment of *prosecution* witnesses with evidence of prior convic-

tions. Nevertheless, "The duty of the prosecutor is to seek justice, not merely to convict" (ABA Standards, The Prosecution Function sec. 1.1(c), at 83 (1974 comp.)), and it is difficult to conceive of a case in which the danger of unfair prejudice to the prosecution or its witnesses would substantially outweigh the probative value of evidence that such witnesses had been convicted of felonies or crimes involving dishonesty.

In the present case, the prosecution does not even argue that it, or its witness, would have been unfairly prejudiced by the excluded impeachment. We therefore conclude that the trial court erred when it excluded evidence of Belinda Hunt's felony conviction. However, Hunt admitted that she had been a narcotics addict and a prostitute for more than a decade, and the jury was well aware that she committed crimes day in and day out for more than 10 years.

Under the circumstances of this case, the jury inevitably concluded that if Hunt had avoided any felony convictions despite years of daily heroin injections, it could only have been due to luck. Thus, it would have been cumulative to present evidence that, in addition to her multitude of other crimes, Hunt had also been convicted of armed robbery. In light of the evidence of Hunt's extensive criminal career, the error in excluding evidence of this additional crime was harmless.

## V. *Collateral Crimes*

██ Defendant argues that the trial court erroneously permitted the jury to hear evidence that he was guilty of crimes other than the offenses for which he was being tried. We agree, but we conclude that the error is harmless.

Belinda Hunt and Linda Scott testified that they went to defendant's apartment with James Johnson on April 2, 1979, and that defendant gave them Talwin and Parabenzamine. After receiving these drugs, the two women spent 15 to 20 minutes in the bathroom of defendant's apartment crushing the Talwin tablets, preparing a solution of these drugs, and injecting themselves using a syringe supplied by defendant. While all this was going on for 15 to 20 minutes, defendant sat in his living room with his wife and James Johnson. In addition to this evidence of possession of drugs by defendant, a police investigator testified that he found some Talwin and Parabenzamine pills when he searched defendant's apartment after the shooting.

The prosecution argues that this evidence of collateral crimes (1) "was relevant to the 'whole scheme of things' which occurred on the night of the killing," (2) was relevant to show why Hunt and Scott were at defendant's apartment, and (3) was admissible under the case-

law which states that the prosecution "may offer a continuous narrative of the events that formed the context of the arrest." See *People v. Sessions* (1968), 95 Ill. App. 2d 17, 24, 238 N.E.2d 94, 98-99.

However, "the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." (McCormick, Evidence sec. 190, at 447 (2d ed. 1972).) If evidence of collateral crimes is substantially relevant for such a legitimate purpose, the trial court should balance, "on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility." McCormick, Evidence sec. 190, at 453 (2d ed. 1972).

We are not persuaded that there was any legitimate need in the present case for presenting evidence that defendant possessed and dealt in controlled substances. We agree that evidence of the circumstances of defendant's arrest became relevant because the initial statements he made to the police were inconsistent with his testimony at trial, but there was no legitimate need for slipping in the evidence of other crimes. And, whatever relevance "the whole scheme of things" had to the trial, it did not justify the introduction of evidence of these other crimes. Moreover, the slight legitimate need for showing why Hunt and Scott were at defendant's apartment was substantially outweighed by the danger of unfair prejudice to the defendant. We therefore conclude that the trial court erred in admitting evidence that defendant possessed controlled substances and gave them to Hunt and Scott.

Nevertheless, in evaluating whether this error was reversible, it is important to note that a major defense strategy was to attempt to discredit the testimony of Hunt and Scott by showing that, just before the shooting, they spent 15 to 20 minutes together in the bathroom of defendant's apartment preparing and injecting themselves with Talwin and Parabenzamine.

Even if the trial court excluded evidence that defendant possessed these drugs and gave them to Hunt and Scott, the jury could not reasonably have concluded that defendant was oblivious to the fact that these two women spent 15 to 20 minutes "mainlining" drugs in his bathroom. Drug addicts may qualify for many pejorative titles, but

they are not generally stupid, and the jury would have certainly recognized that Hunt and Scott would not have undertaken their elaborate and lengthy preparations for "mainlining" unless they knew that their host was aware of and acquiesced in their illicit conduct. We therefore conclude that the additional evidence that defendant possessed these drugs, and supplied them to Hunt and Scott, could not have significantly increased the prejudicial impact of the evidence of drug use which the defense itself adduced. Thus the trial court's error was harmless.

Because of our resolution of this issue, we need not consider whether the police investigator's testimony about finding these drugs in defendant's apartment was the result of an illegal search.

## VI. *Reasonable Doubt*

The next two issues raised by the defense concern whether the evidence justified voluntary manslaughter instructions, and whether the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant testified that he shot James Johnson with a rifle because Johnson attacked him and his pregnant wife. According to defendant and his wife, Johnson was in the act of throwing a bottle at them when defendant shot Johnson with a rifle. However, Belinda Hunt testified that Johnson was unarmed and was 12 feet from defendant when defendant shot Johnson.

Based on defendant's testimony, there was some evidence that he subjectively believed he was justified in using deadly force. But, based on Hunt's testimony, there was evidence that defendant was unreasonable in believing that he was justified in using deadly force. The evidence therefore justified an instruction on "unreasonable belief" voluntary manslaughter. Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b).

Defendant argues that the court erred in also giving an instruction on "intense passion" voluntary manslaughter. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a).) However, the jury only received one set of general verdict forms for both types of voluntary manslaughter, and we have no way of knowing whether the jury found defendant guilty of the "intense passion" or the "unreasonable belief" varieties of this crime.

In this situation, the applicable rule is that "[a] general verdict is presumed to be based on any good count in the indictment to which the proof is applicable." (*People v. Gillespie* (1931), 344 Ill. 290, 295, 176 N.E. 316, 319.) For example, Gillespie was charged with two of-

fenses, but the evidence was insufficient to support a conviction on the first count. Nevertheless, because the jury returned a general verdict, it was presumed that the jury's verdict was on the second count.

 Since the jury in the present case returned a general verdict on the charge of voluntary manslaughter, and the jury was properly instructed on the offense of "unreasonable belief" voluntary manslaughter, we must presume that the jury's verdict was on this charge even if there was insufficient evidence to support a conviction for the other variety of voluntary manslaughter.

We find that the evidence was sufficient to prove beyond a reasonable doubt that defendant is guilty of voluntary manslaughter and armed violence. Even though Hunt was a drug addict, and she admitted flip-flopping before trial on whether she saw the shooting, defendant and his wife admitted that they too lied to the police when they initially denied that defendant shot Johnson. Even when scrutinized with caution, Hunt's testimony is credible in light of the surrounding circumstances. We simply cannot conclude that the jury's verdict is so unreasonable, improbable, or incredible that we would be justified in rejecting its fact findings.

 Furthermore, *People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E. 2d 649, cannot be read as holding that the testimony of a drug addict is always insufficient to support a conviction unless the witness is corroborated on every material point. Instead, the controlling principle is that "[a]lthough the testimony of a narcotics addict must be scrutinized with caution, his testimony may be sufficient to sustain a conviction if credible under the surrounding circumstances." *People v. Norman* (1963), 28 Ill. 2d 77, 82, 190 N.E.2d 819, 822.

## VII. *Due Process*

Finally, defendant argues that the armed violence statute is unconstitutional as applied in this case. Specifically, defendant contends that it is a denial of due process to convict a defendant of armed violence when the predicate felony is voluntary manslaughter. It is argued that the armed violence statute is irrational as applied to a defendant convicted of voluntary manslaughter because the armed violence statute will not deter homicides by people who subjectively believe that they are justified in using deadly force, or who are acting under intense passion.

We disagree with defendant's due process analysis.

 █ "It is a question for the legislature to determine whether an evil exists and what means should be adopted to prevent it, and its acts will not be interfered with unless they are clearly in violation of

some constitutional limitation." (*People v. Lawrence* (1945), 390 Ill. 499, 509-10, 61 N.E.2d 361, 366, *cert. denied* (1945), 326 U.S. 731, 90 L. Ed. 435, 66 S. Ct. 38.) A law which establishes a crime does not violate the constitutional proscription against deprivation of life, liberty, or property without due process of law if the statute is reasonably designed to remedy an evil which threatens the public health, safety, or general welfare. *People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029, 1032.

Unjustified homicides unquestionably threaten the public health, safety, and welfare, and we conclude that the statutory arrangement under which it is a crime to commit voluntary manslaughter while armed with a dangerous weapon is reasonably designed to remedy this evil. The armed violence statute, as applied to a defendant who commits voluntary manslaughter, is not invalid under the due process clauses even though there are people who will not be deterred from committing the prohibited acts. There will always be people who will not be deterred from committing crimes, but due process does not require that a criminal law must be absolutely effective. The armed violence statute, as applied to defendants who commit voluntary manslaughter, is valid under the due process clauses for the same reason that the voluntary manslaughter statute itself is valid: it is a reasonable means of dealing with the grievous problem of unjustified homicides.

Defendant concludes by arguing that it was improper to sentence him for a Class X felony (armed violence) when the jury initially found him guilty of a Class 2 felony (voluntary manslaughter). It is asserted that this (1) "had the effect of eviscerating" the jury's power of leniency and (2) "undermines the existing statutory scheme for homicide."

We recognize that the jury had the power to return an acquittal which defied both the facts and the law. (See our discussion of this power at section I, above.) Thus the jury could have acquitted defendant of armed violence even though he admittedly killed James Johnson with a category I dangerous weapon, and he had already been found guilty of the predicate felony. Nevertheless, the jury did not exercise this power of leniency. Instead, they simply obeyed the court's instructions by applying the law to the facts, and returned a verdict of guilty on the charge of armed violence. This was not improper.

Furthermore, there is no conflict between the armed violence and voluntary manslaughter statutes: the former is a Class X felony, and the latter is a Class 2 felony. (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—3 and 9—2(c); see also Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(3)

and (5).) Defendant was validly convicted of a Class X felony, and he was sentenced for a Class X felony. This was exactly what the legislature intended for someone who committed a felony while armed with a category I dangerous weapon, and there is no ambiguity to be resolved in defendant's favor.

## VIII. *One Act/One Crime*

 The prosecution contends that we should remand to the trial court with directions to enter judgment and impose sentence for the offense of voluntary manslaughter. But the verdicts of guilty on the charges of voluntary manslaughter and armed violence were based on the same, physical act—the homicide of James Johnson—and the trial court was correct in entering judgment and imposing sentence only on the more serious offense. See *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477.

For the preceding reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.