THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VINCENT BUCKNER, Defendant-Appellant.

First District (5th Division)   No. 83—119

Opinion filed January 27, 1984.—Rehearing denied February 28, 1984.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Mark L. Lefevour, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of two counts of armed robbery and one count of aggravated kidnaping and sentenced to 19 years. On appeal, he contends that (1) the admission of hearsay evidence deprived him of his sixth amendment right to confront witnesses; and (2) the trial court (a) abused its discretion in admitting rebuttal evidence on collateral matters, and (b) erred in giving a deadlock instruction.

At trial, Lavergne Harris testified that she and her boyfriend, Sebastian Robinson, were sitting in his car in Douglas Park at approximately 10:30 p.m. on March 5, 1981, when two men approached the car. One of them, whom she identified as defendant, pointed a gun at them through the window, ordered Robinson to get out of the car, and pushed him into the back seat. Defendant got into the front seat with her, and the second man (identified through subsequent testimony as Anthony Evans)[1] who also had a gun, got into the back seat with Robinson. Evans then reached over the seat, ripped her blouse open, and said he was going to rape her; she was raped and forced to perform a deviate sexual act three times, once by defendant and twice by Evans. She had a clear view of defendant's face for 15 minutes while he raped her. Thereafter, defendant placed Robinson in the front seat, ordered her to sit in the back with Evans, and drove out of the park. Harris further testified that as they drove, Evans took her watch and, while they were stopped at a red light, defendant opened the door and yelled to someone that they would meet "over

---

[1]In a separate bench trial, Evans was found guilty and sentenced to concurrent terms of 10 years for rape, deviate sexual assault, armed robbery, and aggravated kidnaping and seven years for aggravated battery. He has not appealed.

there." Defendant then drove into a nearby alley, ordered Robinson out of the car, and forced him into the trunk. A third man joined the group (identified in subsequent testimony as Alfred Martin)[2] and they continued driving. Later, while stopped at a light, Robinson managed to escape from the trunk, after which defendant stopped in an alley, took the two guns out of the car, and hid them somewhere. They then drove for approximately 20 more minutes before defendant stopped and forced her to get out of the car with him. As they were standing near the car, defendant was distracted by an argument between Evans and Martin over her watch, and she was able to escape. She found two officers in the vicinity, and they took her home after she told them what had happened. She and members of her family then went out to search for Robinson and met the same officers, who drove her to another location where she saw Evans and Martin near Robinson's car, but defendant was not with them. She told the officers "that's two of them, but, there is another one." Later, as she walked down a nearby passageway between two houses, she saw officers approaching with defendant and identified him as the third man involved. Harris acknowledged that she and Robinson had been parked in Douglas Park for one hour before the incident occurred, but denied that they had engaged in sexual intercourse at that time. She also stated that although she was in defendant's presence for approximately two hours, she did not try to escape during that time.

Officer Zuelke testified that he and his partner were searching for and saw Robinson's car in an alley. When they drove to the other end of the alley to intercept it, the two vehicles collided. Evans and Martin got out of the car and were apprehended; Martin was wounded in the arm at that time. Zuelke testified that when Harris arrived, she said "that's them," and he acknowledged that he did not see defendant at the scene.

Officer Guisinger testified that he arrived at the scene shortly after Evans and Martin were apprehended and heard Harris say "that's the two; there's one more, and the one that's got the shotgun." He then approached Martin and, after speaking to him, went to a house a short distance from the scene and arrested defendant. As they removed him from the house, Harris arrived and identified him as the third man involved. Guisinger admitted that police reports did not reflect Harris' statement that a third man was involved.

The testimony of Sebastian Robinson corroborated that of Harris,

---

[2]Martin was not indicted with defendant and Evans, and the record does not reveal whether charges were brought against him.

but he added that during the attack in the park, defendant opened the car door several times and, each time he did so, the dome light came on and he had a clear view of defendant's face. Robinson further stated that when they stopped in the alley, defendant forced him out of the car and took his shoes and a jacket which had a ring and some change in the pocket. Defendant ordered him to get into the trunk and, when he refused, struck him in the temple with the gun. When he (Robinson) then entered the trunk, the light was on and he had another clear view of defendant's face as he closed the trunk. After escaping, he called the police and was taken to a hospital for treatment of a cut on his head. The next morning he identified defendant in a lineup. Robinson denied having sexual intercourse with Harris while in the park.

It was stipulated that, when apprehended, Martin had Harris' watch in his possession and Evans had Robinson's ring; that tests performed on Harris were positive for the presence of sperm in the vagina; and that tests performed on the underwear worn by the three offenders at the time of their arrest did not reveal the presence of sperm.

Stephanie Buckner, defendant's wife, testified that defendant came home from work at 4 p.m. on the date of the offense and did not leave the house thereafter. They had a dinner of pork chops and rice which she prepared, and he spent the rest of the evening in their bedroom watching television. She joined him there at approximately 9 p.m. and fell asleep while watching the news. She did not awaken until the police came to their bedroom door in the early morning hours. On cross-examination, Mrs. Buckner admitted that she could not remember what she cooked for dinner the night before or the week before the incident in question, explaining that because she rarely cooked she remembered what she prepared that night; that her parents and two nieces were also in the house that evening; that defendant did not leave the house between 6 and 8 p.m. to attend night classes; and that Martin was her nephew.

Defendant testified that he was employed at Cook & Riley on the date in question, and returned from work at approximately 4 p.m. He had dinner at 7 p.m. and spent the rest of the evening watching television. He denied telling police investigators and an assistant State's Attorney that he went to night school from 6 to 8 p.m. that night, and further denied committing the offenses charged.

Mary Jean O'Malley testified in rebuttal that she provides acccounting services for Cook & Riley, and that a search of its business records revealed that defendant was not employed by that company in

1981.

Assistant State's Attorney Rathe, also testifying in rebuttal, stated that he interviewed defendant at 9:30 a.m. on March 6, 1981. After being informed of his rights, defendant stated that he attended night school classes from 6 to 8 p.m. on March 5. Rathe acknowledged that the statement was not recorded, and that he had no notes pertaining thereto.

## Opinion

Defendant first contends that his right to confront witnesses against him was denied by the State's introduction of hearsay testimony which raised the implication that he was identified by an accomplice. The testimony referred to occurred during the State's examination of Officer Guisinger:

"Q. Officer, after you talked to [Harris], did you then go over and talk to Alfred Martin?

A. Yes, sir.

\* \* \*

Q. What did you say to him?

A. I said where is he and who is he.

Q. After that, where did you go?

A. We went to 1317 South Homan, in the rear.

\* \* \*

Q. What was your purpose of going there?

A. To arrest Vincent Buckner."

Defendant concedes that since the substance of the conversation with Martin was not revealed, the exchange was not technically within the definition of hearsay; *i.e., "testimony of an out-of-court statement* offered to establish the truth of the matter asserted therein, and resting for its value on the credibility of the out-of-court asserter." (Emphasis added.) (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226.) Nevertheless, he argues that this technical distinction is meaningless where the inference to be drawn is clear, and was forcefully brought home to the jury by the prosecutor's closing argument during which, after twice repeating the substance of Guisinger's testimony, he inquired of the jury, "Do you think that's a coincidence?"

The State initially responds that defendant has waived any error in connection with this testimony by his failure to object at trial or to raise the issue in his post-trial motion. As a general rule, such omissions act as a waiver, even of constitutional questions (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), with regard to issues such

as the admissibility of testimony (*People v. Williams* (1977), 52 Ill. App. 3d 81, 367 N.E.2d 167) or improper argument by the prosecutor (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739). Moreover, to be effective, a post-trial motion must set forth with adequate specificity the errors relied upon (*People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899). Errors are not preserved by general allegations (*People v. Smylie* (1981), 103 Ill. App. 3d 679, 431 N.E.2d 1130) or by mere reference to constitutional principles without relating them to any particular aspect of the trial proceedings (*People v. Burns* (1981), 99 Ill. App. 3d 42, 424 N.E.2d 1298). Of course, under the "plain error" exception set forth in Supreme Court Rule 615(a), this court may consider errors otherwise waived. (87 Ill. 2d R. 615(a).) However, that exception is a limited one (*People v. Pickett*), "not *** a general savings clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court" (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227, 231) and should be invoked only where the evidence is so closely balanced that it might be said that the jury's verdict may have resulted therefrom (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233) or the error is of such magnitude that fundamental fairness was denied (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331).

▓▓ In the instant case, it is our view that defendant has waived this issue for purposes of review. No objection was made to admission of the testimony, and his mere assertion in the post-trial motion that he was "denied due process" and "did not receive a fair trial," without reference to anything which occurred during the trial to support those assertions, was insufficient to preserve the issue. Furthermore, we do not believe that the evidence was so closely balanced as to mandate consideration of this issue under the plain error exception. Defendant does not contend that the evidence against him was insufficient to establish guilt beyond a reasonable doubt, and we note that the two complaining witnesses positively identified him within hours of the crime as well as at trial, after ample opportunity to observe him. Harris was in his presence for two hours, during 15 minutes of which she looked directly into his face while in close proximity to him, and Robinson was in his presence for 40 to 45 minutes and had several occasions to view his face under good lighting conditions. While defendant and his wife presented an alibi defense, defendant's credibility as a witness was undermined by proof of false and prior inconsistent statements with regard to some details of his testimony. Thus, we cannot say that the verdict would have been otherwise had that portion of Guisinger's testimony been excluded or had the prosecu-

tor's remarks not been made. See *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.

In addition, we do not believe that the error here, if any, was of such magnitude that fundamental fairness was denied. We held that the issue was waived under similar circumstances in *People v. Williams* (1977), 52 Ill. App. 3d 81, 367 N.E.2d 167, wherein an officer testified that he spoke to an accomplice in order to get information about others involved in the crimes charged, and that immediately after speaking to him he arrested the defendant. We further stated in *Williams* that such testimony was admissible in any event, even though the jury could reasonably infer therefrom that the accomplice implicated the defendant, since the substance of the conversation was not revealed, and an officer may properly testify concerning investigatory procedures. That rule has been upheld in cases where no waiver occurred. See, *e.g., People v. Jackson* (1979), 72 Ill. App. 3d 231, 390 N.E.2d 47; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.

Defendant argues that similar testimony and remarks were recently held to be plain error in *People v. Campbell* (1983), 115 Ill. App. 3d 631, 450 N.E.2d 1318, and that reversal is therefore mandated in the instant case. We have considered *Campbell* and find it distinguishable, noting initially that in *Campbell*, unlike here, the court found on the record before it that it could not say the error complained of did not contribute to the jury's verdict. Furthermore, in *Campbell*, the prosecutor elicited the substance of the out-of-court conversation, and in argument informed the jury that an accomplice had identified defendant, which was a clear violation of the defendants rights under *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. In addition, while the defendant in *Campbell* had failed to include the issue in his post-trial motion, he had made repeated objections both to the admissibility of the evidence and to the prosecutor's remarks. Those objections were sustained by the trial court, but the prosecutor flagrantly ignored the trial court's rulings as well as explicit admonitions to cease that line of argument.

Defendant asserts, however, that the distinction between *Campbell* and the instant case is meaningless, because the inference which arises from eliciting the fact that a conversation took place is as damaging to him as disclosure of the substance thereof and should therefore be considered a violation of his rights under *Bruton*. Nevertheless, cases have repeatedly drawn the distinction and held that *Bruton* is inapplicable where the substance of the conversation is not elicited (see, *e.g., People v. Williams*), and we are not inclined to de-

part from the established rule.

We do not intend to express herein approval of the prosecutor's conduct in this case. The testimony was properly admissible to explain why defendant was arrested, despite the inference of participation which could be drawn therefrom, but it was improper to emphasize that inference by repetition of the testimony during closing argument. While the prosecutor avoided drawing the specific inference for the jury, he came dangerously close to the remarks which required reversal in *Campbell*. Therefore, lest the State misinterpret our holding here as condoning the type of "prosecutorial brinksmanship" denounced in *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, we reiterate that we are confronted with a question of waiver in the instant case, and hold merely that while the remarks were improper, the evidence is not so closely balanced nor the violation of such magnitude that consideration thereof is required under Supreme Court Rule 615(a).

Defendant next contends that he was denied a fair trial by the admission of rebuttal evidence on collateral matters. During direct examination, defendant and his wife testified that he arrived home from work at 4 p.m. on the date in question, and defendant added the detail that he was employed at Cook & Riley. Both witnesses also testified that he did not leave the house during the entire evening and, on cross-examination, defendant denied ever having made a statement to the contrary. In rebuttal, the State produced evidence that defendant was not employed by Cook & Riley at that time, and that shortly after his arrest he told investigators that he attended night school from 6 to 8 p.m. It is defendant's position that this rebuttal testimony was improper because the incident occurred at 10:30 p.m.; therefore, he posits, where he was prior to 4 p.m. and between 6 and 8 p.m. is collateral to the substantive issues and its introduction was highly prejudicial to him.

Once again, we note that defendant neither objected to the admissibility of this testimony at trial nor raised the question in his posttrial motion, and the issue therefore must be deemed waived. Furthermore, assuming *arguendo* that the question was not waived, it is our view that the above testimony was properly admitted.

■ The decision whether to admit rebuttal testimony to explain, contradict, or disprove evidence presented by the accused is within the sound discretion of the trial court, and its determination will not be reversed absent a clear abuse of that discretion. (*People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199.) Such testimony is generally deemed inadmissible where it serves merely to contradict as

to a collateral matter, *i.e.*, one irrelevant to the substantive issues. (See, *e.g., People v. McGhee* (1974), 20 Ill. App. 3d 915, 314 N.E.2d 313.) Defendant asserts that the testimony here was irrelevant to the issue of whether he committed the offenses charged; however, it is established that when a defendant elects to testify in his own behalf, his credibility is placed in issue in the same manner as any other witness (*People v. Clark* (1977), 55 Ill. App. 3d 379, 370 N.E.2d 1111), and when a defendant introduces an issue in his direct examination, though collateral to the facts which the State must prove in its case, his statement may be attacked both on cross-examination and through rebuttal witnesses (see, *e.g., People v. Clark; People v. Teller* (1977), 45 Ill. App. 3d 410, 359 N.E.2d 803; *People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683), and prior statements, to the extent they are inconsistent with his direct testimony offered at trial, may be introduced for the purpose of impeaching his credibility so long as a proper foundation therefor has been laid (*People v. Richardson* (1978), 61 Ill. App. 3d 718, 377 N.E.2d 1235). Here, because defendant stated during direct examination that he worked for Cook & Riley on the date in question, the State was entitled to show that his testimony was incorrect. (See *People v. Brown* (1976), 41 Ill. App. 3d 641, 354 N.E.2d 602.) Similarly, his direct testimony that he never left the house that evening and was at home eating dinner at 7 p.m. was properly shown to be inconsistent with a prior statement that he was away from home between 6 and 8 p.m. Defendant was given an opportunity during cross-examination to explain the inconsistency, but chose instead to deny ever having made the statement. Therefore, the trial court properly permitted the State to show that the statement was in fact made.

Finally, defendant contends that the trial court erred in instructing the jury that it was required to reach a verdict on all five charges, arguing that (a) the decision to give a deadlock instruction was premature where the jury had not indicated that it was deadlocked, (b) the instruction given was improper because it failed to answer the jury's question and did not conform to the standards set forth in *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, and (c) the instruction should have been in writing.

After deliberating for five hours, the jury sent the following note to the trial judge:

> "We have come to a verdict on three counts, but are still hung up on two others. If we can't come to a conclusion on these two counts, what happens to the three we have agreed upon."

The court responded orally:

"[T]he Court instructs the jury as follows: there are four [sic] charges pending against this defendant. You were given ten verdict forms. You were instructed to reach a verdict with reference to each and every one of those matters and the Court instructs you that you are to retire and reach a verdict on all five matters. That is the answer to the question and you will retire to the jury room for the purpose of reaching a verdict on all five matters."

The jury deliberated two more hours, then returned with verdicts of guilty on two counts of armed robbery and one count of aggravated kidnaping. However, it was unable to reach agreement on two charges—rape and deviate sexual assault. When polled, the majority of jurors felt that no agreement thereon could be reached through further deliberation, and the trial court therefore found that the jury was deadlocked as to the remaining charges. Judgment was entered on the three guilty verdicts, and the State's motion for *nolle prosequi* was granted.

■ It is our view that the trial court's communication to the jury was not given as a deadlock instruction but as an answer to the jury's question, and was akin to a direction to continue deliberating which we have found appropriate in other cases. (See, *e.g., People v. Rollins* (1982), 108 Ill. App. 3d 480, 438 N.E.2d 1322 (jury returned verdict on one of three charges and was informed by the court that it was required to return verdicts on remaining charges); *People v. Evans* (1979), 80 Ill. App. 3d 444, 399 N.E.2d 1333 (jury twice instructed to continue deliberations when it indicated that it was deadlocked).) Thus, the trial court did not determine that the jury was deadlocked, and did not intend to give a deadlock instruction. Therefore, although the question remains whether the substance of the communication was proper, we cannot say that the trial court erred in determining that a deadlock instruction was necessary, since none was given or intended to be given.

Defendant also asserts that the trial court's statement was improper because it did not in fact respond to the jury's question. He maintains that because no answer was given, we should consider the court's statement as the equivalent of the "stony silence" in the face of questions, which was criticized as coercive in *People v. Prim.* However, we note that when the question was first received, the following colloquy took place:

"COURT: The Court, after due consideration, will advise the jury that if they reach a verdict on the three counts, the Court will accept the verdicts as reached in the three counts and will

not keep the jury hung up on the other two counts.

DEFENSE COUNSEL: I object.

COURT: On what basis?

DEFENSE COUNSEL: They have to reach a verdict on each and every count.

COURT: Then *** they will be instructed to reach a verdict -- the three counts remain, but, they are still required to reach a verdict on the other two counts.

DEFENSE COUNSEL: That it's [sic] my understanding, your Honor, that you are ruling that the jury will be instructed now -- well, I'd like to backtrack a little Judge. The first question is, should the Court respond to this question at all."

The trial court stated that a response was necessary, and that the jury would be instructed that it must reach agreement on all charges submitted to it. Defense counsel objected on the ground that the jury needed no further instruction because it had been informed of its duty and the statement proposed was therefore merely repetitive. Counsel did not propose an alternative instruction, but continued to insist that no response at all be given.

It appears that the trial court initially proposed to give the answer which it is now argued should have been given, but did not do so when defendant objected. Defendant is therefore in no position to contend here that his objection should have been ignored. Furthermore, the trial court was correct in concluding that it could not remain silent. Since defendant objected to a straightforward answer, it adopted the alternative suggested by defense counsel during the colloquy following his objection; *i.e.*, inform the jury of its duty to reach a verdict on all charges.

Defendant maintains, nevertheless, that the answer as given was coercive, and reversal is therefore required. He posits that the jury was in effect given an exhortation to agree, and the communication should have contained a balancing admonition that a juror who is in the minority should not yield his conscientious convictions merely to achieve unanimity.

█ We disagree with this characterization of the trial court's statement; however, even if the language therein might be deemed an exhortation to reach agreement, we do not believe that defendant was prejudiced thereby, and reversal is therefore not required. (See *People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359; *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) It is obvious that the jury was not "coerced into agreement"; at the time it asked the question, it had already reached agreement on three charges but was unable to do

so on two others. After receiving the trial court's answer and deliberating for an additional two hours, it returned verdicts on three charges but indicated that no agreement could be reached on the remaining two. Since the prejudice feared in exhortations to agree did not occur, any error in the trial court's response must be deemed harmless. See *People v. Preston.*

■ We also reject defendant's contention that reversal is required because the communication was oral rather than written. We have stated that not all directions to the jury should be considered instructions which, under Supreme Court Rules, must be submitted to them in writing (*People v. Dunigan* (1981), 96 Ill. App. 3d 799, 421 N.E.2d 1319) and believe that it was not necessary in the instant case to respond to the question in writing. Oral directions to continue deliberating and even deadlock instructions are commonly given and have been upheld consistently on review. (See, *e.g., People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359 (oral deadlock instruction); *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601 (oral deadlock instruction); *People v. Rollins* (1982), 108 Ill. App. 3d 480, 438 N.E.2d 1322 (oral direction to return a verdict on remaining charges); *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161 (oral deadlock instruction).) Moreover, defendant did not request at the time that the answer be given in writing, and made no objection to the oral direction then or during the two hours in which the jury continued its deliberation. The question was raised for the first time in his post-trial motion, long after the trial court could have corrected any problem by reducing its answer to written form and presenting it to the jury.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.