THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRED HUNTER, Defendant-Appellant.

First District (5th Division)   No. 83—168

Opinion filed May 11, 1984.

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Adam Dabek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted and sentenced to a term of three years for possession of a controlled substance with intent to deliver. On appeal, he contends that (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied his sixth amendment right to confront witnesses against him when the State introduced the hearsay testimony of a police informer; (3) he was deprived of a fair trial by the admission of evidence suggesting his involvement in other crimes; (4) the trial court erred in admitting irrelevant and prejudicial testimony regarding illicit drug usage; (5) he was denied due process of law by the State's failure to timely disclose the identity of rebuttal witnesses in violation of Supreme Court Rule 412 (87 Ill. 2d R. 412); (6) he was denied a fair trial by the admission of (a) irrelevant evidence during cross-examination of a defense witness, and (b) improper rebuttal testimony on that collateral matter; (7) the trial court erred in (a) refusing tendered instructions concerning lawful possession of controlled substances, and (b) failing to grant a mistrial based on prosecutorial misconduct; and (8) one of his convictions for possession of a controlled substance with intent to deliver must be vacated since the two counts arose from a single physical act.

At trial, Officer Sebeck testified that during his seven-year career as a Chicago police officer, he had participated in approximately 500 investigations involving many types of narcotics, the most common

being injectable pills, which are pills usually taken orally when prescribed by a physician but injected in solution form by illicit users. Among those injectable pills was a combination known as "T's and Blues," consisting of equal parts of Talwin, a peach-colored pill commonly prescribed as a pain killer, and Pyrobenzamine, a blue-colored, nonprescription pill used in the treatment of colds. Illicit users generally purchase the pills in tinfoil packets containing one of each pill.

Sebeck further testified that on September 4, 1981, he and his partner were working in the area of Montrose and Broadway on an unrelated case when they noticed defendant seated alone in his parked station wagon. Based on a conversation with an informant a month earlier regarding defendant and that car, they began surveillance and observed an individual approach the car and exchange something with defendant. He (defendant) was then followed to another location, where three to five other persons approached his parked car and exchanged something with him. Suddenly, one of the individuals recognized them as police officers, and the group around the car scattered and ran. Defendant pulled away from the curb and turned the corner, but stopped when they signaled for him to do so. When defendant opened the door, he (Sebeck) noticed 10 to 14 pink and blue pills scattered on the front seat and floor. He recognized them as "T's and Blues," and immediately placed defendant under arrest and searched the car. No other substances were found in the front portion of the car, but he discovered five bottles in a locked rear compartment which contained Talwin, Pyrobenzamine, Preludin, Ritalin, and Dilaudid. He and his partner then transported defendant to a police station where the bottles of pills were placed in a sealed narcotics envelope and sent to a police laboratory for analysis.

On cross-examination, Sebeck acknowledged that his reports did not mention any exchanges between defendant and the individuals who approached the car; that no attempt was made to apprehend any of those persons; that he found no tinfoil or syringes in defendant's car; and that, in testimony at a pretrial hearing, he had stated he saw 10 to 14 pink pills, which he recognized as Talwin, on the front seat of defendant's car. He also stated that a separate inventory of 10 to 14 loose pills was not filed, explaining that his partner placed those pills in the appropriate containers found in defendant's trunk prior to the inventory, and that he did not search defendant for money, since at that time cash was considered contraband only when commingled with the narcotics.

Officer Audino corroborated Sebeck's testimony and added that he recognized the individuals who approached defendant's car as illicit

narcotics users. He also testified that he searched defendant when he was arrested and found approximately $90 in cash on his person, but no controlled substances; that after Sebeck gave him the pills found on the front seat of defendant's car, he placed them in the containers found in the rear compartment; and that Sebeck had to open the locked rear compartment forcibly when defendant claimed that he had no key therefor. Audino admitted that although he recognized the individuals who approached defendant's car, he made no attempt to apprehend them, nor had he sought to question any of them since that time. He also stated that the bottles found in defendant's car had labels bearing the name of a physician and a date, as well as a second name which was illegible. However, one bottle bore the date April 6, 1979, and one of the bottles labeled Talwin actually contained Ritalin.

Gerald Pazin, a forensic chemist, testified that he examined the bottles of pills recovered from defendant's car, and four of the bottles contained, respectively, pentazocine (commonly called Talwin), methylphenidate (commonly called Ritalin), phenometrizine (commonly called Preludin), and triple minimine (commonly called Pyrobenzamine). The contents of the fifth bottle were insufficient to make a positive identification, but it was possible that the substance therein was Dilaudid. All but Pyrobenzamine were controlled substances, and all were manufactured by pharmaceutical companies.

Sergeant McCue, testifying as an expert witness for the State on the use and abuse of narcotic substances, stated that Talwin is used by drug abusers almost exclusively in conjunction with Pyrobenzamine, and the combination, known as "T's and Blues," is a substitute for heroin. They are purchased on a one-to-one ratio, called a set, for $8 to $10 per set, and are crushed, mixed with liquid, heated, and injected. A user will inject two to six sets per day. Ritalin is usually sold individually, in conjunction with Talwin and Pyrobenzamine, but is sometimes misrepresented as Talwin. McCue further testified that he knew of no legitimate purpose for having Talwin, Ritalin, and Preludin in conjunction with one another; however, he admitted that all three are commercially manufactured and prescribed by doctors. Ritalin and Preludin are stimulants, while Talwin is an analgesic used primarily to relieve light to moderate pain. Pyrobenzamine, an antihistamine, is a nonprescription drug used in the treatment of allergies and asthma.

Letisha Stadelman testified for defendant that she was the wife of Dr. Chester Stadelman and had worked for him as a receptionist, as well as keeping records and dispensing medication, during the 55 years that he practiced medicine. On September 1, 1981, defendant,

whom she recognized as one of her husband's patients, came to his office complaining of pain. She called her husband, who was at home ill that day, and after talking to him gave defendant a two-month supply of Talwin (120 pills), a two-month supply of Ritalin (120 pills), and 30 Preludin tablets. The pills were kept on the premises, and she placed them in plastic containers before giving them to defendant.

On cross-examination, Mrs. Stadelman stated that she noted in defendant's medical record that he was given the pills, but her husband disposed of all his records when he retired on September 15, 1981, and defendant's records were no longer in existence. Mrs. Stadelman further stated that her husband, who was then 81 years old, had been ill for approximately five years and had had a very limited practice since suffering a stroke in 1980. She acknowledged that at the time defendant came to the office, her husband was no longer seeing patients and had not been to the office in three to four weeks. Defendant had no appointment, and the office just happened to be open because she was there preparing to close it permanently. Mrs. Stadelman denied that she ever dispensed medication to other patients, and admitted that defendant was not given a physical examination prior to receiving the drugs.

Thomas Dwyer, an assistant State's Attorney testifying for the State in rebuttal, read several sections of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1100 *et seq.*), which provided that if a drug containing pentazocine is dispensed other than by administering, an official triplicate form must be filed with the State and a copy thereof retained in a separate patient's record for two years; that the ultimate user can lawfully possess a controlled substance only in the container in which it was delivered by the person dispensing it; and that an oral prescription for a substance containing pentazocine may be issued only in an emergency situation. At defendant's request, Dwyer also read sections of the act providing that an ultimate user or a person in possession of any controlled substance pursuant to a lawful prescription of a practitioner may lawfully possess controlled substances; and that "prescription" means a lawful written or verbal order of a physician.

Michael Fullman, an assistant deputy director of the Illinois Department of Registration and Education, also testifying for the State in rebuttal, stated that a search of that agency's records revealed that Dr. Stadelman made no filings of the required triplicate form for the months of September through December 1981. He acknowledged that the ultimate user is not required to file anything with the State, and that Dr. Stadelman was licensed to prescribe and dispense controlled

substances in September 1981.

OPINION

Defendant initially contends that he was not proved guilty beyond a reasonable doubt, arguing first that the State failed to prove an essential element of the crime charged.

With regard to this contention, defendant asserts that the State must prove each element of the crime charged (*People v. Wolter* (1979), 78 Ill. App. 3d 32, 396 N.E.2d 1102), and posits that in order to prove that he knowingly possessed controlled substances with intent to deliver, the State must prove (1) that his possession of those substances was unlawful, and (2) that he intended to deliver them. He argues that since the substances in question were dispensed to him by an agent or employee of a licensed physician, the State has failed to prove the first of these elements.

■ Initially, we note that defendant was not charged with violation of section 402 of the Illinois Controlled Substances Act (the Act) (Ill. Rev. Stat. 1981, ch. 56½, par. 1402), proscribing unlawful possession, but with violation of section 401 (Ill. Rev. Stat. 1981, ch. 56½, par. 1401), which provides in relevant part that "[e]xcept as authorized by this Act, it is unlawful for any person knowingly to *** possess with intent to *** deliver, a controlled substance." Nevertheless, it is apparently defendant's position that if his possession of the drug was lawful, he may not be convicted of violating section 401, regardless of what he intended to do with that substance. We find this argument untenable; in effect, he argues that, if an individual receives a controlled substance from a licensed practitioner, he may thereafter do whatever he wishes with it, including delivering it to an illicit user. Such a result was clearly not the legislature's intention in enacting this statute, nor is such an interpretation possible under the Act.

An analysis of the relevant portions of the Act reveals that the gist of the crime of possession with intent to deliver is the intended disposition of the controlled substance, not the manner in which possession was acquired. Section 302 of the Act would authorize possession with intent to deliver by "[p]ersons registered by the Department of Registration and Education under this Act to manufacture, distribute, or dispense controlled substances ***." (Ill. Rev. Stat. 1981, ch. 56½, par. 1302(b).) The Act would further authorize possession with the intent to deliver by the following unregistered persons: "an agent or employee of any registered manufacturer, distributor, or dispenser of any controlled substance if he is acting in the usual course of his employer's lawful business or employment; a common or contract car-

rier or warehouseman, or an agent or employee thereof, whose possession of any controlled substance is in the usual lawful course of such business or employment; [and] a registered pharmacist who is employed in, or the owner of, a pharmacy licensed under this Act *** at the licensed location, or if he is acting in the usual course of his lawful profession, business, or employment." (Ill. Rev. Stat. 1981, ch. 56½, pars. 1302(c)(1), (2), (5).) Defendant does not contend that he falls within any of these categories of persons authorized by the Act to possess controlled substances with the intent to deliver them, and there is nothing in the evidence which would so indicate. Instead, he argues that his possession was authorized by section 302(c)(3) of the Act, which provides that controlled substances may lawfully be possessed by the ultimate user thereof. (Ill. Rev. Stat. 1981, ch. 56½, par. 1302(c)(3).) However, while that section would be relevant to section 402 of the Act, prohibiting unlawful possession, it is irrelevant to section 401, since by definition an ultimate user is not one who possesses a controlled substance with intent to deliver, but one who possesses it "for his own use or for the use of a member of his household ***." (Ill. Rev. Stat. 1981, ch. 56½, par. 1102(ss).) Thus, an ultimate user would not fall within the category of persons "authorized by [the] Act *** knowingly to *** possess with intent to *** deliver, a controlled substance." (Ill. Rev. Stat. 1981, ch. 56½, par. 1401.) It is true that possession of a controlled substance by an ultimate user does not violate section 401, but that is because he has no intent to deliver, not because his possession thereof is lawful.

It is our view that in proving the crime of possession with intent to deliver, the State must show that the defendant knowingly possessed the controlled substance, that he did so with the intent to deliver it, and should there be indication to the contrary, that the defendant was not authorized by the Act to possess it with that intent. The manner in which the defendant acquired the controlled substance may be relevant insofar as it bears on his intent or on his authorization, but it is not a separate element of the crime of possession with intent to deliver. Defendant's argument here with regard to his possession of the controlled substances as an ultimate user is clearly directed at the element of intent to deliver rather than at any separate element of lawful possession.

■ We turn, then, to his alternative contention, that the State has failed to prove beyond a reasonable doubt that he intended to deliver these controlled substances, maintaining that it can most reasonably be inferred from the evidence that he possessed them for his own use. In particular, he relies on the testimony of Mrs. Stadelman to the

effect that he came to her husband's office complaining of severe pain and, after talking to the doctor, she dispensed various controlled substances to him; that the substances found in the car were not accessible to him because they were locked in the trunk, and he had no key; and that he did not have large amounts of cash in his possession when arrested.

A verdict of guilty will not be set aside on review unless the evidence fails to sustain that verdict, or the evidence is so improbable, unsatisfactory, or inconclusive as not to be worthy of belief (*People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331; *People v. Rhoads* (1982), 110 Ill. App. 3d 1107, 443 N.E.2d 673), and where an element of the crime charged is a specific mental state, the existence thereof is a question of fact to be determined by the jury, as with any other fact (*People v. Terrell* (1982), 110 Ill. App. 3d 1086, 443 N.E.2d 742). Of course, mental states by their very nature must generally be inferred from the facts and circumstances surrounding the alleged offense (*People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46); however, where those facts and circumstances could give rise to either of two inferences, our standard on review is the same as with any conflicting evidence: we will not substitute our judgment for that of the jury unless the inference it accepts is inherently impossible or unreasonable (*People v. Schaefer* (1980), 87 Ill. App. 3d 192, 409 N.E.2d 129; *People v. Colley* (1980), 83 Ill. App. 3d 834, 404 N.E.2d 378; *People v. Trump* (1978), 62 Ill. App. 3d 747, 379 N.E.2d 370).

In the instant case, defendant argues that the only reasonable inference to be drawn from the evidence is that he possessed the controlled substances in question for his own use. We disagree. It is our view that the facts and circumstances of this case point overwhelmingly to but one reasonable inference; namely, that defendant possessed Talwin and Ritalin with intent to deliver them. While Mrs. Stadelman asserted that the drugs were dispensed to defendant for his own use, the circumstances of their acquisition indicate otherwise. Dr. Stadelman was an 81-year-old physician who apparently had been incapable of practicing medicine for some time and was no longer seeing patients. Nevertheless, his wife stated that after speaking with him, she dispensed large quantities of controlled substances to defendant without determining the origin of his supposed pain or the truth of his claim, nor does it appear that she even suggested defendant should consult with a practicing physician. The jury could reasonably have believed that Mrs. Stadelman lacked credibility, particularly in view of her testimony that any records which might have corroborated that defendant had been a patient, or disclosed that defendant

suffered from some illness requiring long-term consumption of both analgesics and stimulants, had been destroyed shortly after his arrest.

Any inference that defendant possessed these substances for his own use is further negated by the volume and combination of controlled substances in his possession and the manner in which they were kept. The jury was not confronted here with possession of a small amount of medication in defendant's pocket or in his home medicine cabinet; rather, the evidence showed that he had approximately 350 pills locked in the trunk and scattered on the front seat of his car. Furthermore, there was evidence that the combination of drugs in his possession was of the type most commonly abused, specifically, "T's and Blues" and Ritalin, which is often misrepresented as Talwin. In this regard, we also note that there was evidence that the Ritalin was in a container marked as Talwin. In addition, the Talwin which was allegedly dispensed to defendant for his own use on September 1, 1981, was not only still in the trunk of his car on September 4—an unusual place to keep prescribed medication—but also in a container bearing the date April 6, 1979.

Defendant urges that the jury could not reasonably have found that he possessed these drugs with intent to deliver because the evidence disclosed that he had no key to the trunk and had only $90 in his possession. We do not believe that this evidence is dispositive on the issue of defendant's intent, since it did not establish that defendant had no key, but rather, that he merely claimed to have none when the arresting officers asked for a key in order to search the trunk of his car. With regard to the amount of money in defendant's possession, we note that the evidence does not indicate how many transactions defendant might have engaged in immediately before his arrest, apart from the four to six persons who approached his car as the officers observed him. Assuming that each of the transactions observed was a drug transaction, although there is no positive evidence thereof, the amount of cash in defendant's possession was in keeping with that number of transactions.

Finally, the facts and circumstances observed by the arresting officers further contribute to the inference that defendant possessed Ritalin and Talwin with the intent to deliver them. They first observed defendant sitting alone in his parked car. A known drug user approached, and an exchange took place. Defendant then moved to another location just two blocks away, and again parked his car and remained seated therein. Several more known drug users approached him, and further exchanges took place. When those individuals real-

ized that police officers were observing them, they scattered and ran, and defendant immediately left the scene. When stopped by the officers, he had 10 to 14 of the pills known as "T's and Blues" on the front seat of his car.

Defendant asserts that the testimony of the officers was not credible, noting a number of alleged inconsistencies in their statements. The credibility of witnesses and the weight to be given their testimony is within the province of the jury to determine, and we do not believe that the minor inconsistencies, if any, noted by defendant rendered their testimony so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt as to his guilt. (*People v. Rainge* (1983), 112 Ill. App. 3d 396, 445 N.E.2d 535.) Defendant maintains that Sebeck testified that Audino approached the passenger side of the car, while Audino stated that he remained at the back of the vehicle to protect his partner. We do not see this as a discrepancy, since Audino may well have stationed himself at the rear passenger side, and his testimony in no way contradicts that of Sebeck. Defendant also points out that Sebeck testified that nothing was found in the search of defendant's person, while Audino stated that defendant had $90 in his pocket. However, it was Audino, not Sebeck, who conducted the search, and we believe that Sebeck's testimony was directed to the presence of contraband, and he explained that he did not consider cash contraband unless it was commingled with the drugs. Finally, defendant asserts that Audino testified that both he and Sebeck recognized the people who approached his car, while Sebeck allegedly stated that he did not recognize them. We find this to be a mischaracterization of Sebeck's testimony. He was not asked if he recognized those individuals, and never said that he did not. In the testimony referred to by defendant, Sebeck, when asked on cross-examination if he wrote down a description of the persons who approached defendant's car, responded that he did not. There is nothing in that response which would indicate that Sebeck did not recognize them.

Defendant also argues that Sebeck's testimony at trial was impeached on a vital point, and it was thus not worthy of belief. Sebeck testified at trial that there were 10 to 14 pink and blue pills, which he recognized as "T's and Blues," on the front seat of defendant's car. However, he acknowledged that, at a pretrial hearing, he testified that he saw 10 to 14 pink pills, which he recognized as Talwin. Defendant maintains that this discrepancy destroys the State's case, since the State "admits" that it is only the presence of those loose blue pills on the front seat which gives rise to an inference of intent

to deliver. We are aware of no such admission by the State and, as we have already discussed, there are numerous facts and circumstances giving rise to that inference. Furthermore, Sebeck's testimony at the pretrial hearing was offered for the sole purpose of establishing probable cause for defendant's arrest and the search of his car. As such, the important information would have been the fact that a controlled substance, in this case Talwin, was in plain view in the car, and it is not unreasonable to believe that Sebeck saw no reason to mention the blue pills at the hearing. In addition, Sebeck's trial testimony was corroborated by Audino, who stated that Sebeck handed him 10 to 14 pink and blue pills before searching the rear compartment of defendant's car.

Given the totality of facts and circumstances established by the evidence, it is our view that the jury could easily have concluded therefrom that defendant possessed these substances with the intent to deliver them, and not for his personal use.

■ Defendant next contends that he was denied his sixth amendment right to confront witnesses against him by the admission of hearsay testimony regarding information provided to the arresting officers by an informant, in violation of a motion *in limine* granted by the trial court which specifically excluded that testimony. At a pretrial hearing regarding probable cause to arrest defendant and search his car, Officer Sebeck testified that approximately one month before the arrest, an informant said that defendant, whom he identified as "Speedy," was selling drugs in the area, having taken over the usual route of a deceased member of the El Rukn gang. The informant also provided a description of defendant's car, including the license plate number. The trial court ruled that the substance of this information could not be revealed at trial, but stated that the officers could testify then to the fact that the conversation took place. Pursuant to this ruling, Officers Audino and Sebeck were allowed to testify, over defendant's objection, that they placed defendant under surveillance based on a conversation with an informant concerning defendant and his car. It is defendant's position that this hearsay testimony violated the trial court's order and was highly prejudicial because it raised the inference that he had engaged in other crimes. It is our view that the testimony was in compliance with the court's ruling on the motion *in limine*; nevertheless, the question remains whether even that limited testimony should have been admitted.

Hearsay is an out-of-court statement which is offered to prove the truth of the matter asserted therein and dependent for its value on the credibility of the out-of-court declarant. (*People v. Jones* (1983),

114 Ill. App. 3d 576, 449 N.E.2d 547.) With limited exceptions, such statements are inadmissible because the party against whom they are offered has no opportunity to test that credibility through cross-examination of the declarant. (*People v. Parrott* (1976), 40 Ill. App. 3d 328, 352 N.E.2d 299.) However, it has been held that where the testimony of an out-of-court statement is offered, not for the truth thereof, but for the limited purpose of explaining the reason the police conducted their investigation as they did, the testimony is not hearsay. *People v. Sanders* (1980), 80 Ill. App. 3d 809, 400 N.E.2d 468.

In the instant case, the testimony in question was admitted for the purpose of explaining the officers' investigatory procedure, and therefore was not hearsay. The trial court took care to avoid undue prejudice to defendant by assuring that the damaging substance of the conversation would not be heard by the jury. Under similar circumstances, officers have been permitted to testify that after conversing with an individual they took certain actions. (See, *e.g., People v. Griggs* (1982), 104 Ill. App. 3d 527, 432 N.E.2d 1176; *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247.) Such testimony is not hearsay because it is based on the officers' own personal knowledge, and is admissible although the inference logically to be drawn therefrom is that the information received motivated the officers' subsequent conduct. Here, of course, the officers made that inference explicit when they testified that, based on the information received, they placed defendant under surveillance. However, such statements also have been held not to constitute hearsay, again because they were not offered for the truth of the matter asserted therein, but merely to explain the officers' conduct. See, *e.g., People v. Thomas* (1975), 25 Ill. App. 3d 88, 322 N.E.2d 597.

Testimony similar to that offered by Officers Sebeck and Audino was recently held admissible under remarkably similar circumstances in *People v. Munoz* (1982), 103 Ill. App. 3d 1080, 432 N.E.2d 370. The defendant therein was also charged with unlawful possession of a controlled substance with intent to deliver. It was revealed at trial that a confidential informant related a description of defendant's car to police officers and, based on that information, the officers began surveillance of the car and eventually effected defendant's arrest. On appeal, the court held that the testimony regarding the conversation with the informant was admissible since it was offered merely to explain why the police followed the defendant and searched his car. Similarly, here, the testimony was admitted merely to explain why the officers commenced surveillance of defendant.

Defendant asserts that the testimony was nevertheless inadmissi-

ble because, since the conversation took place one month before his arrest, the jury could have inferred that he had engaged in other crimes. We do not believe that this distinguishes the instant case from other cases where the evidence has been held admissible, since in all such cases the objection raised is that the jury could infer therefrom that information was provided which implicated the defendant in crime. In cases where officers have testified that they spoke to an accomplice in order to gather information about others involved in the crime charged, and immediately after that conversation arrested the defendant, we have found such testimony admissible despite the fact that the jury could reasonably infer therefrom that the accomplice implicated the defendant. (See, *e.g., People v. Jackson* (1979), 72 Ill. App. 3d 231, 390 N.E.2d 47; *People v. Williams* (1977), 52 Ill. App. 3d 81, 367 N.E.2d 167; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) We find those cases dispositive, since the inference that an accomplice implicated the defendant has no less potential for prejudice than the possible inference than an informant implicated him in another crime.

Defendant further argues, however, that contrary to its assertion that the testimony was offered merely to explain investigatory procedure, the State treated the testimony as evidence of intent to deliver in closing arguments. Therefore, he posits, the information was offered for the truth of the matter asserted therein and should have been excluded as hearsay. The conversation with the informant was mentioned by the prosecutor on three occasions in closing argument. On two of those occasions, it appears that the reference was clearly to investigatory procedures, and constituted proper argument on the evidence. On the third occasion, in arguing to the jury evidence from which it could infer intent to deliver, one factor mentioned was "the prior conversation of the officers with their informant." We agree that this was improper use of the evidence. (See, *e.g., People v. Buckner* (1984), 121 Ill. App. 3d 391, 459 N.E.2d 1102.) However, it is objectionable because it constituted improper argument, not because the testimony was hearsay. During trial, when the trial court ruled on defendant's objections, it correctly held that the testimony was admissible for the limited purpose of explaining the officers' actions. There is no way the court could have then known that the prosecutor would subsequently make improper use of that testimony, and it is our view that the later argument cannot serve to make a proper evidentiary ruling of the court retroactively erroneous.

■ With regard to the impropriety of the prosecutor's argument concerning that testimony, it should be noted that prosecutors have

recently begun to take improper advantage of the admissibility of such evidence by ostensibly offering it for the limited purpose, and, once it is admitted, making impermissible use thereof in closing argument (see, *e.g., People v. Buckner* (1984), 121 Ill. App. 3d 391, 459 N.E.2d 1102), and we would warn that this conduct is improper and, in flagrant cases, may lead to reversal (see, *e.g., People v. Campbell* (1983), 115 Ill. App. 3d 631, 450 N.E.2d 1318). If the State indeed intends to use it for the limited purpose permitted, the prosecutor should confine his arguments to that purpose, and any improper use should not be tolerated. Here, however, there was only a single improper reference to which the trial court sustained defendant's objection and further admonished the jury that the content of the conversation with the informant was not in evidence and was not to be considered by them. We believe that by promptly sustaining the objection and instructing the jury to disregard it, the trial court cured any prejudice to defendant resulting from the improper argument. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) Moreover, in the light of the overwhelming evidence of defendant's guilt, we do not believe that it can be said the jury's verdict would have been different had this single remark not been made.

■ Defendant also contends that he was denied a fair trial by the admission of evidence suggesting his involvement in other crimes. When arrested, defendant had in his possession approximately 30 tablets of Preludin, which is also a controlled substance. Although he was not charged with possession thereof with intent to deliver, the trial court denied his motion *in limine* to exclude any evidence of other drugs found in his car. The trial court also allowed testimony that the Ritalin was in a container marked "Talwin," and it appears that, pursuant to section 312(g) of the Act, "[a] person to whom or for whose use any controlled substance has been *** dispensed *** may lawfully possess such substance only in the container in which it was delivered to him by the person dispensing such substance." (Ill. Rev. Stat. 1979, ch. 56½, par. 1312(g).) Defendant argues that admission of this testimony regarding other crimes was highly prejudicial and inflammatory, and his conviction must therefore be reversed.

It is generally true that evidence of offenses other than those for which a defendant is being tried is inadmissible (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288); however, exceptions are made where that evidence is probative of motive, intent, identity, absence of mistake, or *modus operandi* in establishing the crime charged (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489). Where it appears that the proffered evidence is within one of these exceptions, the deci-

sion whether to admit it lies within the sound discretion of the trial court (*People v. Lieberman* (1982), 107 Ill. App. 3d 949, 438 N.E.2d 516) based on a balancing of the need for and strength of that evidence in proving the crime charged against " '*** the degree to which the jury will probably be roused by the evidence to overmastering hostility' " (*People v. Rollins* (1982), 108 Ill. App. 3d 480, 492, 438 N.E.2d 1322, 1331).

We see no abuse of discretion in the instant case, since the evidence in question was highly relevant on the issue of defendant's intent to deliver. His defense was that these drugs were dispensed for his own use, and that claim is negated by the fact that he had in his possession approximately 350 pills, all of them commonly abused substances. Furthermore, there was testimony which established that the combination of drugs found in his possession would not have been possessed for any legitimate purpose. Thus, both the quantity and the combination of the substances in defendant's possession were probative of his intentions, and the evidence that he possessed Preludin in addition to Talwin and Ritalin was relevant to that question. The testimony regarding the mislabeled Ritalin was further evidence of his intentions, since it appears from other testimony that Ritalin is frequently misrepresented to illicit users as Talwin. Finally, we do not believe that the evidence concerning 30 Preludin tablets, in addition to approximately 225 Ritalin and Talwin, or the evidence that the Ritalin was mislabeled, would have so "roused the jury to overmastering hostility" that the evidence should have been excluded despite its probative value on the issue of intent.

Evidence of other drug-related crimes has frequently been held admissible where it tended to establish intent or knowledge with regard to the crime charged (see, *e.g., People v. Goodman* (1979), 75 Ill. App. 3d 369, 393 N.E.2d 1233; *People v. Hanson* (1977), 44 Ill. App. 3d 977, 359 N.E.2d 188), but defendant argues that these cases are distinguishable, and asserts that the possession of a completely different substance cannot be used to establish intent to deliver the substance charged. However, as noted above, we do not believe that it is only the possession of the subject matter of the charge which can shed light on a defendant's intentions. Furthermore, it appears to us that defendant misinterprets the case he relies upon to establish the proposition that the evidence is inadmissible unless it involves the identical substance as the subject of the crime charged. In *People v. Pates* (1980), 80 Ill. App. 3d 1062, 400 N.E.2d 553, the defendant was charged with possession of 10 pounds of cannabis with intent to deliver. The substance was in the back of a friend's pickup truck; how-

ever, after defendant's arrest, officers found a burning marijuana cigarette in the ashtray of his car, and a small amount of marijuana in the pocket of a jacket on the back seat. The court held that the marijuana found in the car should not have been admitted because it simply was not probative of the offense charged, stating that "[i]t [was] merely probative of the fact that defendant and/or a passenger in his car, used or possessed marijuana." (80 Ill. App. 3d 1062, 1068, 400 N.E.2d 553, 558.) The supreme court agreed that, under those circumstances, the possession of a small amount of marijuana was not probative of his intent to deliver the 10 pounds which was the subject matter of the crime charged. (*People v. Pates* (1981), 84 Ill. 2d 82, 88, 417 N.E.2d 618, 621.) Defendant relies on the fact that both courts, in discussing the evidence, noted that the marijuana discovered in defendant's car was not of the same type as the marijuana in the back of the pickup truck. However, contrary to defendant's assertions, a review of the totality of the evidence in that case reveals that this was not the basis for the court's ruling. It was concerned, as we are here, with whether or not the separate crime was probative of any issue to be proved in the crime charged, and found that it was not, under the circumstances therein. In the instant case, we believe that the circumstances of the other crimes were probative on the issue of intent, and therefore properly admitted.

■ Defendant further contends that the trial court erred in admitting the testimony of Officers Sebeck and McCue relating to the abuse of controlled substances. He maintains that this evidence was totally irrelevant to the crime charged, and was extremely prejudicial because "[i]t was designed to acquaint the jury with lurid details of drug addicts and drug trafficking thereby suggesting that the defendant was responsible for its existence." Furthermore, he asserts, the evidence served to distract the jury from the issue to be decided, *i.e.*, whether he possessed Ritalin and Talwin with the intent to deliver them.

Evidence is relevant which tends to prove or disprove a disputed fact (*People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011), or tends to make a point in issue more or less probable (*People v. Reed* (1982), 108 Ill. App. 3d 984, 439 N.E.2d 1277), or explains a fact in evidence (*People v. Neiman* (1967), 90 Ill. App. 2d 337, 232 N.E.2d 805); it has been said that whatever is relevant is admissible, and " '*** [e]xceptions to that principle must justify themselves' " (*People v. Monroe* (1977), 66 Ill. 2d 317, 321, 362 N.E.2d 295, 296). The initial determination of what is relevant is within the sound discretion of the trial court, and its decision will not be disturbed on review unless it

appears that its discretion has been abused. *People v. Franklin* (1981), 93 Ill. App. 3d 986, 418 N.E.2d 155.

In the instant case, we believe that the testimony in question was relevant on the issue of defendant's intent to deliver. Unlike proscribed substances such as heroin, marijuana, and cocaine, the abuse of controlled substances which have other, legitimate uses is not likely to be within the common knowledge of the lay person. Thus, while the jury heard that defendant possessed Talwin and Pyrobenzamine, a fact which tended to make it more probable that he had the intent to deliver Talwin, it might not have been able to properly evaluate that testimony or the significance thereof without the explanation that this combination, called on the streets "T's and Blues," is one of the most frequently abused substances. Furthermore, without explanation that Ritalin is often misrepresented by drug dealers as Talwin, the jury would have missed the significance of mislabeling Ritalin as Talwin, and it appears that this fact is further evidence from which the jury could have inferred the requisite intent. Thus, we believe that such evidence is admissible under circumstances such as those presented here, where possession of a combination of drugs is probative on the issue of intent, and the significance of that combination, from which intent can be inferred, is not likely to be within the common knowledge of the ordinary juror.

Defendant maintains that, despite any probative value this testimony might have had, it should have been excluded because its value was outweighed by its prejudicial effect. It is true that otherwise relevant evidence is generally excluded where its prejudicial effect far outweighs its probative value, as where photographs of a homicide victim are so gruesome as to arouse prejudicial emotions in the jury. (See, *e.g., People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.) Defendant seeks to bring the evidence in question within that exception by labeling it "lurid." However, we find nothing lurid, gruesome, or inflammatory in the officers' straightforward presentation of the facts concerning how "T's and Blues" are abused. There was no testimony regarding the drug's short- or long-term effect on users, and no statistics were presented regarding the frequency of its abuse or problems related thereto. For these reasons, we do not agree that any prejudicial effect of the evidence outweighed its probative value, and find that the trial court did not abuse its discretion in admitting the testimony in question.

Defendant further complains that the prosecutor made improper use of this testimony in arguing to the jury the evils of drug abuse and the need to punish drug pushers. We have examined the argu-

ments complained of and find that they constitute permissible argument concerning the "evil results of crime and the benefits of a fearless administration of the law." *People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739, 744.

■ Defendant next contends that he was denied due process of law by the State's failure to make timely disclosure of the identity of rebuttal witnesses. He maintains that the State has an affirmative duty to make such disclosure, citing Supreme Court Rule 412 (87 Ill. 2d R. 412) (hereinafter Rule 412) and *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593). The State, however, asserts that it has no duty to disclose the identity of rebuttal witnesses, citing section 114—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—9) (hereinafter section 114—9) and *People v. Hope* (1974), 22 Ill. App. 3d 721, 318 N.E.2d 128.

It appears that conflicting lines of cases have developed regarding the relationship between section 114—9 and Rule 412. Section 114—9 provides that, "[o]n motion of the defendant the court shall order the State to furnish the defense with a list of prosecution witnesses" (Ill. Rev. Stat. 1979, ch. 38, par. 114—9) but specifically exempts rebuttal witnesses from that requirement. Rule 412(a) similarly provides that, upon written motion of defense counsel, the State shall provide "the names and last known addresses of persons whom the State intends to call as witnesses," but goes on to state that "[i]f the State has obtained from the defendant pursuant to Rule 413(d) [allowing the State, upon written motion, to discover intended defenses and a list of defense witnesses] information regarding the defenses the defendant intends to make, it shall provide to defendant not less than 7 days before the date set for *** trial *** the names and addresses of witnesses the State intends to call in rebuttal ***." (87 Ill. 2d R. 412(a).) Some courts, looking solely to Rule 412, have held that it requires the State to provide a list of all intended witnesses, without reference to the time it intends to call them (see, *e.g., People v. Calderon* (1981), 98 Ill. App. 3d 657, 424 N.E.2d 671; *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593), while others look to section 114—9 and hold that the State is under no duty to disclose rebuttal witnesses (see, *e.g., People v. Spaulding* (1979), 68 Ill. App. 3d 663, 386 N.E.2d 469; *People v. Hope* (1974), 22 Ill. App. 3d 721, 318 N.E.2d 128).

It is our view that these provisions are reconcilable. Section 114—9 is addressed to motions, and the Code of Criminal Procedure of 1963 provides the "[d]iscovery procedures in criminal cases shall be in accordance with Supreme Court Rules." (Ill. Rev. Stat. 1979, ch. 38, par. 114—13.) Section 114—9 exempts rebuttal witnesses from the re-

quirement of disclosure upon motion, but we note that the Code of Criminal Procedure of 1963 makes no provisions for reciprocal disclosure of defendant's witnesses upon motion of the State. Under those circumstances, it would be difficult for the State, in the absence of information regarding defendant's case, to know what it might be required to rebut; hence the exemption of rebuttal witnesses from the requirement of disclosure.

In contrast, the discovery procedures established by the supreme court do provide for reciprocal discovery (87 Ill. 2d R. 413), and it is only when the State has taken advantage of this right to discovery that the affirmative duty arises under Rule 412 to disclose any rebuttal witnesses it intends to call. In *People v. Manley* (1974), 19 Ill. App. 365, 371, 311 N.E.2d 593, 598, the court appeared to impose a broader duty of disclosure than that required by Rule 412, noting:

> "It is obvious, however, as a practical matter, that the relevancy of the testimony of the rebuttal witness and of his statement may not be known until the State is informed of the direction of defendant's case after response by the defendant to the State's discovery request. Nonetheless, once the intent is formed to call a witness or to utilize his statement, the identity of the relevant witness and his statement should fall within the prosecutor's continuing obligation of disclosure under Supreme Court Rule 415(b)."

Thus, *Manley* goes beyond Rule 412, and holds that even where there has been no disclosure by the defendant pursuant to Rule 413, the State must still make timely disclosure pursuant to Rule 415 once it forms the intention to call a rebuttal witness.

Here, defendant contends that Rule 412 is applicable, pointing out that the State learned, pursuant to a written discovery motion under Rule 413(d), that defendant would contend that the substances in question were for his own personal use, and that he would call Dr. and/or Mrs. Stadelman as witnesses. He also asserts that remarks of counsel establish that the State interviewed Mrs. Stadelman and learned the substance of the testimony eventually given by her at trial. The State, however, insists that, in interviews, Mrs. Stadelman stated that she would refuse to testify; therefore, it posits, it did not decide to call the rebuttal witnesses until after she testified, and contrary to its expectations did not stand on her fifth amendment right against self-incrimination. Therefore, it argues, even if there were a duty to disclose, it arose not under Rule 412, since it did not expect Mrs. Stadelman to testify as she did, but under Rule 415, requiring disclosure once the intent to call a rebuttal witness is formed, and

that no such intention arose until the end of Mrs. Stadelman's testimony.

We, of course, have no way of ascertaining what was truly in the mind of the prosecutor with regard to when he formulated the intention to call these witnesses. We hesitate to rely solely on mere declarations of subjective intent, lest the State be encouraged to delay "making up its mind" in order to circumvent the discovery requirements of Rule 412. Fortunately, we need not reach that issue here, for even assuming *arguendo* that the State failed to make timely disclosure of its intention to call these witnesses, we do not believe that the trial court abused its discretion in refusing to exclude them. As we stated recently in *People v. Galindo* (1981), 95 Ill. App. 3d 927, 932-33, 420 N.E.2d 773, 777:

> "We agree that the proper procedure is to have the State inform defense counsel of witnesses who will be called to testify in rebuttal when the State forms that intention ***. The trial court however is not *required* to exclude the rebuttal witness' testimony, even though there has not been strict compliance with the discovery rule. As noted previously, the exclusion of evidence in such circumstances is within the sound discretion of the trial court. [Citation.] The exercise of this discretion will only be reviewed upon a showing of prejudice to defendant. [Citations.]"

In the instant case, defendant makes no claim that he was prejudiced by the State's failure to timely disclose the names of these witnesses. He did not seek a continuance, and in fact failed to take advantage of the State's offer to make the witnesses available for interview prior to testifying, negating any claim of surprise. (See *People v. Galindo* (1981), 95 Ill. App. 3d 927, 420 N.E.2d 773.) Moreover, it appears that defense counsel conducted a very able cross-examination of these witnesses, bringing out testimony in support of the asserted defense. Under these circumstances, the trial court did not abuse its discretion in refusing to exclude the rebuttal testimony on the ground that timely disclosure was not made.

■ Defendant also contends that the trial court erred in (a) permitting the State to cross-examine Mrs. Stadelman regarding the type of records kept by her concerning controlled substances, and (b) allowing rebuttal testimony on this collateral issue.

With regard to the cross-examination in question, we note that the scope thereof is generally limited to matters raised on direct examination, including all matters which explain, qualify, or destroy that direct testimony (*People v. Adams* (1982), 111 Ill. App. 3d 658, 444

N.E.2d 534) and, while a witness may not be cross-examined on irrelevant or collateral matters for the purpose of later contradiction (*People v. Brown* (1982), 106 Ill. App. 3d 1087, 436 N.E.2d 696), the prosecutor may properly pursue a line of questioning initiated by the defendant (*People v. Delaney* (1978), 63 Ill. App. 3d 47, 379 N.E.2d 829). Moreover, what constitutes permissible cross-examination is for the trial court to determine, and its decision will not be disturbed on appeal unless that discretion has been abused (*People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170) and results in manifest prejudice to the defendant (*People v. Jodie* (1979), 79 Ill. App. 3d 348, 398 N.E.2d 595).

Here, Mrs. Stadelman testified in direct examination that defendant was a regular patient of the doctor, and that one of the duties she performed as an employee of her husband was record keeping. The circumstances under which these substances were dispensed to defendant was relevant on the issue of intent, and since Mrs. Stadelman stated that she was the record keeper, we believe that the State was properly allowed to inquire concerning the type of record kept, whether the record was still in existence, and the circumstances of its destruction. The question remains, however, whether the rebuttal offered in response to that testimony was properly admitted.

Rebuttal testimony has been defined as "that which is adduced by the prosecutor to explain, repel, contradict, or disprove evidence given by the defendant" (*People v. Bush* (1981), 103 Ill. App. 3d 5, 14, 430 N.E.2d 514, 521), and its admission rests within the sound discretion of the trial court (*People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199). However, it may be used only to rebut defendant's evidence as to material, not collateral or irrelevant matters (*Williams*), and is generally inadmissible when presented in response to testimony elicited on cross-examination unless the cross-examination related to a specific, relevant issue or the rebuttal evidence discredits the witness in some respect (*People v. Rudi* (1981), 94 Ill. App. 3d 856, 419 N.E.2d 646).

The rebuttal testimony in the instant case consisted of statements regarding what type of records must be kept, and evidence that Dr. Stadelman failed to keep the required records. The State maintains that this testimony was relevant on the issue of defendant's lawful possession of the controlled substances, and impeached the witness' credibility. Defendant, however, asserts that a doctor's failure to keep proper records is immaterial to the legality of the recipient's possession, since the responsibility for proper record keeping lies with the dispensing practitioner, not the patient.

We agree that the testimony was of doubtful relevancy. Certainly the circumstances under which defendant received these substances, insofar as his own participation therein was concerned, and even the fact that the record made thereof by Mrs. Stadelman was destroyed only days after defendant's arrest, were relevant on the issue of intent to deliver. However, defendant had no control over what type of records were kept and, while the record keeping may have been relevant to any complicity on the part of the Stadelmans in the crime charged, we believe that it was irrelevant on the issue of defendant's guilt. Furthermore, as we noted earlier, technical legal possession is not an element of the crime of possession with intent to deliver, although it may be relevant on the issue of intent. All the State could hope to show by the rebuttal testimony is that defendant may not, technically, have been in absolute legal possession of the controlled substances because of the Stadelman's failure to comply with State record- keeping requirements, but that technicality, which we believe is open to question, is not relevant to defendant's *intent.*

We also reject the State's argument that the rebuttal evidence somehow reflected on the witness' credibility. On cross-examination, Mrs. Stadelman stated that she was unaware of legal requirements regarding keeping records of controlled substances for two years, explaining that the doctor always took care of such matters. She did not say that no such laws existed, only that she was unaware of them; therefore, reading the laws into evidence as proof of their existence did not reflect in any way on the credibility of her testimony. Similarly, Mrs. Stadelman did not state, nor was she asked, whether her husband made the required filing; thus, proof that he did not in no way reflected on her veracity.

We further note that reading statutes into evidence is a rather unusual practice in any event. The State maintains that it was necessary to prove that Dr. Stadelman was required to keep records. The law itself is proof of that, and there was no need to read it into the record in order to show violation thereof. All the State needed to do was present the facts which, under the law, would establish violation of the doctor's duty, then present instructions as to the law's provisions. Initially, the State proposed to present the testimony only of Mr. Fullman, in order to show that no filing was made with the appropriate agency. Before doing so, the prosecutor asked the court to take judicial notice that such a filing was required, and presented the trial court with the appropriate statutes. The following colloquy then took place:

"COURT: I can do it [take judicial notice], but how about de-

parting [*sic*] that to the jury?

PROSECUTOR: *** We can incorporate it into a jury instruction ***.

COURT: Instructions can only be based on the evidence in the case. We can't introduce evidence in the case by way of instruction.

* * *

PROSECUTOR: There's evidence there was no record kept.

COURT: I know, but that's one thing. There's no evidence in the case that it was a violation of the law not to keep them.

PROSECUTOR: Then as an alternative, we would ask also leave to add Thomas Dwyer *** to the witness list, who can testify to that."

Defense counsel raised objections to calling Dwyer as a witness on the ground that (a) there had been no proper disclosure of that witness, and (b) the testimony was irrelevant and not proper rebuttal. After debating the relevancy of the testimony with the trial court, defense counsel engaged in the following exchange:

"DEFENSE COUNSEL: Then your Honor, are you permitting the state's attorney Dwyer to testify in this case?

COURT: Yes, certainly.

DEFENSE COUNSEL: And he's going to testify as to what the law is in the State of Illinois, is that correct?

COURT: Right.

DEFENSE COUNSEL: And you're going to permit that?

COURT: Right. How many times are you going to ask that?

DEFENSE COUNSEL: Would you note our objection for the record?"

The trial court's ruling was clearly improper. While it may have required proof for its own satisfaction that the evidence to be presented was relevant, *i.e.*, that the failure to file the record was a violation of the law, there was no reason to read that law to the jury. The parties do not prove to the jury what the law is, the trial court tells the jury what the law is. Here, Mrs. Stadelman had already testified that the records were destroyed. Assuming the State could properly seek to have the jury informed as to the law requiring that records be kept (and we believe that it could not, since, as we noted, that issue is irrelevant to defendant's guilt), it should have been done through instruction, as the State initially proposed.

The only specific objections raised by defendant to Dwyer's testimony went to its relevancy and the State's failure to disclose his name pursuant to discovery. The later exchange between the court

and defense counsel does not articulate as a basis for objection that the evidence was more properly the subject of jury instruction, and it is unclear whether the thrust of defense counsel's objection was to that issue, or to the earlier issues. On appeal, defendant confines his argument thereon to a single sentence:

"Moreover, the State's reading of the statutes to the jury had the effect of instructing the jury on the law, thus usurping the function of the judge and prejudicing the defendant by interfering with the neutrality of the instruction process."

Unfortunately, defendant cites no case law in support of this statement, and it is likely that none exists, excusing his failure to do so. While we agree that the evidence should not have been admitted, we are not convinced that it amounted to "interfering with the neutrality of the instruction process."

■ In any event, not every impropriety requires reversal; it may be harmless if it is inconsequential (*People v. Glover-El* (1981), 102 Ill. App. 3d 535, 430 N.E.2d 147) or if it appears that it did not affect the outcome of the trial (*People v. McCabe* (1980), 89 Ill. App. 3d 554, 411 N.E.2d 1097), *i.e.*, when considered in the light of the preponderance of the evidence introduced which establishes the defendant's guilt (*People v Trolia* (1982), 107 Ill. App. 3d 487, 437 N.E.2d 804). We have already expressed our view regarding the overwhelming nature of the evidence against defendant, and need not repeat our analysis here. For this reason, we do not believe that the jury could have reached any different conclusion had this testimony been excluded, and its admission was therefore harmless.

Defendant also asserts that the prosecutor improperly utilized the evidence of failure to comply with record-keeping requirements in closing argument. However, the arguments complained of concerned the coincidental circumstance that any records corroborating defendant's treatment by Dr. Stadelman and receipt of the controlled substances were destroyed, and the fact that defendant's receipt of the pills from a medical doctor did not conclusively establish his innocence. We believe that this was proper argument based on the evidence and the law. On only one occasion did the prosecutor refer to the probative value of the rebuttal testimony, stating:

"Mr. Dwyer was here to let you know that the Stadelmans were not following the law and from that, you can infer how he got those pills and why he had them. There's a record-keeping requirement which wasn't followed."

However, defendant failed to object to this statement and, in the light of the overwhelming evidence against him, we must consider the issue

waived. See *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.

■■■ Defendant further contends that he was denied a fair trial by the court's refusal to give two non-IPI instructions he tendered. The first state that "[a] person may lawfully possess controlled substances when he is an ultimate user or a person in possession of any controlled substance pursuant to a lawful prescription of a practitioner." The second defined prescription as "a lawful written or verbal order of a physician, dentist, podiatrist or veterinarian for any controlled substance." In rejecting these instructions, the trial court noted that they contained an incomplete statement of the law, but also stated that it would consider a revised instruction which more adequately set forth the applicable law. No such instruction was tendered.

It is defendant's position that the instruction was analogous to an instruction on an affirmative defense, since the law creates an exemption to unlawful possession for ultimate users and those in possession pursuant to a lawful prescription. Therefore, he posits, while the decision whether to give a non-IPI instruction rests within the sound discretion of the trial court (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282), rejection of the proffered instruction was an abuse of that discretion, since the jury was not otherwise apprised of this exemption.

Defendant's argument rests on the erroneous assumption, previously addressed herein, that the status of "ultimate user" is within the category of persons authorized to possess controlled substances with the intent to deliver them. As we noted, the law creates no such exemption and, while the jury should be given instructions which embody the defendant's legal theory of the case (Supreme Court Rule 451(a), 87 Ill. 2d R. 451(a)), that rule does not encompass instructions on erroneous or irrelevant theories. Defendant was not charged with unlawful possession; therefore, the question whether ultimate users may lawfully possess controlled substances was not an issue in this case. Moreover, it is our view that the tendered instructions would have given the jury the erroneous impression that if defendant received the substances from a licensed physician, he could not be guilty of unlawful possession with intent to deliver. In particular, we note that defendant, while urging that the jury be instructed as to the definition of prescription, studiously avoided the parallel definition of "ultimate user," *i.e.*, one who possesses the substance for his own use. Without that, the instruction, even if it were proper, is incomplete, since that definition is the only one which bears on intent—the central issue of the crime charged.

What defendant sought here was not to place before the jury by way of instruction a relevant legal theory, but his argument on the facts. He asserts, nonetheless, that in the absence of that instruction, his theory of the case was never placed before the jury. We disagree. Defendant's theory was placed before the jury through the testimony of Mrs. Stadelman, through the very sections of the statute he later offered as instructions, brought in during the cross-examination of Assistant State's Attorney Dwyer, and through defense counsel's argument that defendant possessed these drugs for his own use. Nevertheless, he theorizes that because these instructions were omitted, the issue of intent was removed from the jury's consideration. However, we believe that the jury was adequately instructed on the issue through Illinois Pattern Jury Instruction (IPI), Criminal, No. 17.11 (2d ed. 1981), which states:

"To sustain the charge of possession with intent to deliver a controlled substance, the State must prove the following proposition:

That the defendant knowingly possessed with the intent to deliver Pentazocine also known as Talwin, a controlled substance.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

An identical instruction was given with regard to Ritalin. These instructions accurately, without argument, set forth relevant issues, including the issue of intent. Since this instruction was appropriate and complete, we see no abuse of discretion in the trial court's refusal to give the proffered instructions. (See *People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.) Approved uniform instructions are to be used, and may be modified or supplemented only when the facts make them inadequate. (*People v. Dordies* (1978), 60 Ill. App. 3d 621, 377 N.E.2d 245.) Thus, had one of the statutory exemptions for possession with intent to deliver been present, an additional instruction thereon might have been warranted. However, there is nothing in the facts of the instant case requiring modification or supplementation of IPI Criminal No. 17.11 on the question of intent or authorization.

■ Defendant next contends that the trial court erred in denying his motions for mistrial based on prosecutorial misconduct in (a) cross-examining Mrs. Stadelman concerning her arrest for failure to

comply with defendant's subpoena, and (b) improper and inflammatory comments during closing argument, urging as grounds for reversal that the cumulative impact of these errors denied him a fair trial. This appears to be two separate arguments, since the basis stated is more properly directed at refusal to grant a new trial; the ground set forth here was not argued by defendant at trial as the basis for any of the numerous motions for mistrial. Moreover, there could have been no "cumulative impact" until the alleged improprieties accumulated; that is, until the trial was completed. Therefore, we will treat these as separate questions and consider first, whether any of the alleged improprieties required a mistrial, and second, whether, when considered as a whole, any improprieties found to exist established grounds for a new trial based on prosecutorial misconduct.

The standard for reviewing the trial court's refusal to grant a mistrial was set forth recently in *People v. Winfield* (1983), 113 Ill. App. 3d 818, 839, 447 N.E.2d 1029, 1046:

> "[T]he decision whether or not to grant a mistrial is within the broad discretion of the trial court [citation], a decision which will not be disturbed unless the defendant establishes that he was prejudiced both by the comment complained of and by the denial of his motion for a mistrial [citation]. Thus, it must appear that there was a manifest necessity for the mistrial or that the ends of justice would be defeated by continuance of the trial [citation]; that is, that the jury has been so influenced and prejudiced that it would not, or could not, be fair and impartial [citation], and the damaging effect of the evidence cannot be remedied by admonitions or instructions [citation]."

With this standard in mind, then, we turn to the individual allegations of improper prosecutorial conduct raised by defendant.

He first argues that the prosecutor ignored the trial court's sustaining of his objections in an attempt to place irrelevant and prejudicial evidence before the jury. His contention is based on the following exchange during cross-examination of Mrs. Stadelman:

> "PROSECUTOR: Now, an investigator for the Department of Law Enforcement called you up on the telephone correct?
>
> DEFENSE COUNSEL: Objection, Your Honor. Sidebar.
>
> COURT: Objection sustained.
>
> PROSECUTOR: Now, isn't it true that you indicated to a Department of Law Enforcement * * *
>
> DEFENSE COUNSEL: Objection.
>
> PROSECUTOR: Agent that you would not come to court and testify for Fred Hunter?

DEFENSE COUNSEL: Objection and motion.

COURT: Objections sustained.

PROSECUTOR: Now isn't it true that you indicated to him that you would not come to court and testify?

WITNESS: I don't remember.

DEFENSE COUNSEL: Objection.

COURT: The objection has been sustained to that question.

PROSECUTOR: Mrs. Stadelman, you didn't come to court the first time you appeared here of your own free will, did you?

DEFENSE COUNSEL: Objection.

COURT: Objection sustained.

PROSECUTOR: Isn't it true that you had to be arrested and brought ***.

DEFENSE COUNSEL: Objection and motion.

COURT: Just a moment. Objection sustained."

Defendant argues that it was improper for the prosecution to make unsupported insinuations of misconduct on the part of the witness in her dealings with defendant. He maintains that this exchange left the jury with the impression that Mrs. Stadelman did not want to subject herself to possible prosecution by testifying for him, and encouraged the jury to draw therefrom an inference of defendant's guilt.

A major thrust of defendant's argument is that the insinuation was unsupported by the evidence, citing *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353. However, the point in *Nuccio* was that the State, after asking the questions and receiving denials, failed to present rebuttal testimony in response to those denials, leaving its insinuations unsupported. Here, objections were sustained before any answer was received; thus, the State had no way of determining whether rebuttal would be necessary, nor would such rebuttal have been admissible, since there was nothing to rebut. The question here, then, is not whether the insinuations were "unsupported," but whether the information sought was admissible for any valid purpose.

The State asserts that the fact that Mrs. Stadelman had refused to testify, and as a result her attendance at trial was eventually compelled through issuance of a bench warrant, was admissible evidence of bias, prejudice, or motive to testify falsely, as well as reflecting on her credibility. However, while evidence of that type is generally admissible (see, *e.g., People v. Adams* (1982), 106 Ill. App. 3d 467, 435 N.E.2d 1203), we see nothing in the information sought which would bear on these issues. The State claims that by establishing that she was forced to testify, it would show that she had motive to testify falsely in order to protect her husband. We agree that Mrs. Stadelman

had reason to support defendant's theory, since arguments outside the presence of the jury established that both she and Dr. Stadelmen were under investigation by the State with regard to their distribution of controlled substances. However, the questions asked were not designed to elicit that motive, nor would affirmative responses thereto have been evidence from which such a motive could be inferred. The mere fact that she was a reluctant witness is not probative of any motive to testify falsely. The State somewhat ingenuously argues on appeal that since these were general objections, the prosecutor must have assumed that they were directed at the form of the question, and his repeated attempts were merely directed at rephrasing the question in its proper form. The passage quoted speaks eloquently to the contrary, since exactly the same question was asked on two occasions, after objection thereto had been sustained.

Thus, we agree that these questions were improper, since the information sought was outside the scope of direct examination, was irrelevant to a material issue in the case, and was in no way probative of interest, bias, or motive to testify falsely. Nevertheless, we see no prejudice therein of the magnitude which would necessitate granting a mistrial. Defendant asserts that these questions, coupled with later testimony regarding record-keeping requirements, left the jury with the impression that the Stadelmans were being investigated for their misconduct. As we stated in response to the State's arguments, we perceive no such inference in these questions, even when considered in the light of later testimony (which, in any event, had not been presented at the time the court ruled on the motion for a mistrial). The only inference to be drawn was that Mrs. Stadelman did not want to testify, and reluctant witnesses are hardly a rarity in criminal prosecutions. In the absence of any prejudice to defendant, we believe that the trial court acted properly and adequately in sustaining objections to the questions, and did not abuse its discretion in refusing to grant a mistrial.

Defendant also raises numerous contentions with regard to alleged improprieties in the prosecutor's closing arguments. We have already addressed a number of his assertions, including references to the officers' conversation with an informant; references to defendant's possession of Preludin and the fact that he possessed Ritalin in a container marked Talwin; and arguments concerning the evils of crime and the benefits of vigorous administration of justice. Defendant's additional arguments add nothing to his earlier contentions, and we need not repeat our analysis here. We found that only one of the arguments was improper—that which stated the conversation with the

informant was evidence to be considered on the issue of intent to deliver. However, we also stated that the trial court's prompt action in sustaining the objection thereto and instruction the jury to disregard it cured any prejudice to defendant. For this same reason, defendant has failed to establish the manifest necessity of granting a mistrial.

▆▆ Defendant also asserts that the State improperly implied that its case was uncontradicted, which was not an accurate summary of the evidence and constituted comment on his failure to testify. In the passage complained of, the prosecutor stated:

"[A]nd I would like to, at this time, comment upon the defense. Well its unrebutted and it's uncontradicted that those pills were in the defendant's car. Unrebutted and uncontradicted that the defendant had the T and the Blue."

We reject defendant's argument that this comment inaccurately stated the evidence because the State's evidence with regard to defendant's possession of the pills was not only uncontradicted, it was admitted by defendant. His entire theory of the case admitted possession of the substances but denied intent to deliver them. It is obvious that this passage made reference only to the element of knowing possession, and that element was, in fact, uncontradicted. Furthermore, defendant's argument that the reference to "uncontradicted and unrebutted" constituted improper commentary on his failure to testify is totally unsupported by the cases cited. Indeed, those cases establish precisely the contrary; that is, that the argument in question was proper. In *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283, 285-86, the supreme court stated:

"The prosecution may, however, refer to the fact that the testimony of the State's witnesses is uncontradicted even though the defendant would be the only person who could have contradicted it [citations], for this involves no more than an accurate summary of the evidence."

It is only when the "thrust [of the argument] is the defendant's nonappearance rather than the strength of the State's case" that commentary on the uncontradicted nature of the evidence is deemed improper. (*People v. Escobar* (1979), 77 Ill. App. 3d 169, 178, 395 N.E.2d 1028, 1035.) Thus, impropriety has been found where there was *repeated* argument that the case was uncontradicted (*e.g., People v. Johnson* (1981), 102 Ill. App. 3d 122, 429 N.E.2d 905), or where the evidence in fact was not uncontradicted, but the prosecutor stated that "there was no defense in this case" (*e.g., People v. Escobar* (1979), 77 Ill. App. 3d 169, 395 N.E.2d 1028). We believe that this single, accurate reference constituted proper commentary on the facts,

and was not calculated to draw attention to or comment upon defendant's failure to testify.

    ■ Defendant next asserts that the prosecutor improperly attempted to bolster the credibility of the State's witnesses by arguing that they were experienced police officers who would not jeopardize their careers by perjuring themselves. It is true that a prosecutor should not argue that a State's witness is more credible simply because he is a police officer (see, *e.g., People v. Ford* (1983), 113 Ill. App. 3d 659, 447 N.E.2d 564); however, it appears that cases are in conflict regarding whether a prosecutor may properly argue that police officers would not jeopardize their careers by making false charges against the defendant (compare *People v. Parker* (1979), 72 Ill. App. 3d 679, 391 N.E.2d 89 (held to be improper argument) with *People v. Mayfield* (1979), 72 Ill. App. 3d 669, 390 N.E.2d 1315 (held to be proper argument)). We need not resolve that conflict in the instant case, for it is our view that the argument in question was invited by defense counsel's closing argument. The major thrust of the defense argument was that Officers Sebeck and Audino were not credible, and it was implied throughout that they were lying, through such reference as "they stopped him for nothing," implying that the officers did not see any exchanges with known drug users, and "This [finding pills on the front seat of the car] didn't happen. Being a police officer is like being any professional. The name of the game is productivity." In the light of this attack on the officers' credibility and motives in arresting defendant, it is our view that the State's argument was proper, invited response to which defendant may not object. See *People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816.

    ■ The last allegation of improper argument concerns the prosecutor's references to the defense raised as "a smoke screen." Defendant contends that this constituted improper comment on the character of defense counsel, and while acknowledging that his counsel used that same phrase in reference to the State's evidence, he argues that the prosecutor's use thereof on eight occasions exceeded the bounds of invited argument. While the use of this phrase has been held to be improper (*People v. Wilson* (1983), 120 Ill. App. 3d 950, 458 N.E.2d 1081), it is generally considered nonprejudicial (see, *e.g., People v. Robinson* (1980), 91 Ill. App. 3d 1138, 415 N.E.2d 585, and cases cited therein). Here, it is our view that its use was not grounds for a mistrial, since we believe that it cannot reasonably be contended that it was so inflammatory that the jury could not render a fair and impartial verdict.

    The question remains whether the improprieties committed, while

individually not grounds for a mistrial, are collectively so prejudicial as to mandate a new trial. The standard to be applied is whether the error was so prejudicial that defendant did not receive a fair and impartial trial (*People v. Brown* (1983), 113 Ill. App. 3d 625, 447 N.E.2d 1011); that is, whether it can be said that the jury's verdict might have been different had those improprieties not occurred. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 407 N.E.2d 988.) Here, the trial court sustained objections to the comment regarding the conversation with an informant, as well as to questions concerning Mrs. Stadelman's reluctance to testify, which we found to be nonprejudicial in any event. Moreover, there is some question whether the third incident, reference to the defense as a "smoke screen," though improper, was invited. In contrast to this, we have the overwhelming evidence of defendant's guilt. Under the circumstances, given the nature of the evidence, we do not believe there is any possibility that the jury might have decided otherwise had the remarks and questions complained of not been made.

Finally, defendant contends that one of his convictions must be vacated, since both arose from a single act. In support thereof, he cites *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, and *People v. Tonaldi* (1981), 98 Ill. App. 3d 528, 424 N.E.2d 1200, which held that simultaneous possession of more than one type of controlled substance constitutes a single offense for which there can be only one conviction. The State agrees that these cases are dispositive, and urges that we vacate one of the convictions. Therefore, we direct that defendant's conviction for possession of Ritalin with intent to deliver be vacated. The trial court entered judgment on both verdicts, but imposed only one sentence. Since defendant raises no question with regard to the propriety of that sentence, remandment for resentencing is unnecessary.

For the foregoing reasons, defendant's conviction of possession of Talwin with intent to deliver and the sentence thereon are affirmed, but his conviction of possession of Ritalin with intent to deliver is vacated.

Affirmed in part; vacated in part.

LORENZ and O'CONNOR, JJ., concur.